**STAR SUPPLY COMPANY and Maurice Lamar, Appellants,**

v.

**Robert D. JONES and Jones Business Sales, Appellees.**

No. 04–82–00232–CV.

Court of Appeals of Texas, San Antonio.

Jan. 18, 1984.

Rehearing Denied Feb. 16, 1984.

William C. Church, Jr., Kampmann, Church & Burns, Inc., San Antonio, for appellants.

Rudy Garza, Robert D. Sohn, Tinsman & Houser, Inc., San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

Star Supply Company and its president, Maurice Lamar, appeal from a judgment awarding a brokerage commission in the sum of $47,250.00, along with interest and attorney's fees, to Robert D. Jones and Jones Business Sales (Jones). Trial was to the court. Findings of fact and conclusions of law have been filed. We affirm in part and reverse and render in part.

The facts are not in dispute. Star Supply Company is a Texas corporation which sells construction equipment and rents construction machinery. Stock in the corporation was owned by two persons, Maurice Lamar and Tommy W. Burns. On October 3, 1978, Star Supply Company, by its president Maurice Lamar, entered into an exclusive listing agreement with Jones. By its terms the broker agreed to find a buyer who would pay $945,000.00 for the business by December 31, 1978. The terms further specifically excluded the corporation's real estate and set the broker's commission at 5% of the gross sales prices or a minimum of $4,000.00, whichever was greater. Following submission of two other earnest money contracts, the terms of which differed somewhat, a final earnest money contract (same buyers) dated October 23, 1978, was presented to Lamar, the purchasers agreeing to pay $945,000.00 for the business. Subsequently Star Supply, through Lamar, advised Jones and the prospective buyers the business was no longer for sale. At trial Lamar admitted the earnest money contract "satisfied me ... I was satisfied with the terms at that time, yes ... that was what we were looking for, yes."

The earnest money contract provided for the purchase of 100% of the stock (Lamar owned 50%, and Burns 50%), and for all personal property, including furniture, fixtures, office supplies, equipment, stationery, merchandise for resale, the present telephone number, trade names, work in progress, transferable permits, leases, franchises, equity in leased property, customer deposits, accounts receivable, signs, advertising material, supplies on hand, customer list, good will ... "meaning hereby to include everything used in or about the above business...." The trial court entered judgment against Star Supply Company, the corporation, and Lamar, individually, but declined to find Tommy W. Burns individually liable.

Appellants advance three points of error: that Jones did not plead and prove he was licensed under the provisions of the Texas Securities Act, TEX.REV.CIV.STAT.ANN. art. 581–34 (Supp.1982–83), and that the securities (stock) were registered; that the earnest money contract was not in accordance with the listing agreement; and, that Jones failed to plead and prove the listing agreement was to sell the interest of Maurice Lamar individually; therefore he is not individually liable. (In that respect, it is argued, the contract was not in accordance with the listing agreement).

The Texas courts look to decisions of the federal courts to interpret the Texas Securities Act because of obvious similarities in the Federal Securities Act of 1933, 15 U.S.C.A. § 77a, et seq. (1981). *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637 (Tex.1977). The United States Supreme Court has applied an "economic reality" test to determine when a transaction which includes the sale of shares of stock is a transaction in securities. In defining "securities," the court stated, "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, 1251 (1946). That test has been reiterated in *United Housing Foundation v. Forman*, 421 U.S. 837, 847, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621, 629 (1975). That court stated the emphasis should be on economic reality. The test for distinguishing a transaction in securities, within the meaning of the regulatory acts, from other commercial dealings is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. 421 U.S. at 852, 95 S.Ct. at 2060. When the goal of the purchaser is not an investment which relies on the efforts of others, but is a desire to consume, use, and acquire in its entirety the thing being purchased, the securities laws do not apply. *Id.* The *Forman-Howey* test has been applied in Texas. *Wilson v. Lee*, 601 S.W.2d 483, 485 (Tex.Civ.App.—Dallas 1980, no writ).

The trial court's supplemental finding of fact twenty-two stated, "The listing agreement ... listed for sale a corporate entity by the name of Star Supply Company." Conclusion of law number nine stated:

"Maurice Lamar, on his own behalf and on behalf of Star Supply Company, agreed ... that the sale of the said Star Supply Company would be accomplished by the transfer of 100% of the outstanding stock of the corporation. The Listing Agreement in question lists for sale the 'corporation'. The manner in which the Seller(s) and Buyer(s) consummated the deal was simply a means to the end desired...."

The finding of fact was not challenged. *See City of Fort Worth v. Bewley*, 612 S.W.2d 257, 259 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.).

Applying the "economic reality" test of *Howey-Forman*, we hold transferring the stock of the company was a means of effecting transfer of the corporate entity and merely indicated ownership of the entire business. Because this was not a sale of "securities" as contemplated by article 581–34, there was no necessity that Jones be licensed as a securities broker to effectuate the sale of the corporation. We overrule the first point of error.

The emphasis of appellants' second argument, that the earnest money contract was not in accordance with the listing agreement, is that the agreement was to sell the *assets* of the corporation while the earnest money contract was for the sale of the *stock* owned by Lamar and Burns.

A listing agreement is an agreement (contract) which provides that the broker will be paid an agreed commission if he produces a purchaser ready, willing, and able to buy the listed property under the terms of the contract. *Padre Sands, Inc. v. Cawood*, 595 S.W.2d 896, 899 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r. e.).

Finding of fact fifteen provides:

Plaintiffs, Defendants, and the prospective purchasers contemplated the sale of the entire business known as the Star Supply Co., and no distinction by the parties or prospective purchasers was made concerning whether the sale was for stock or assets of the company.

The trial court also entered this conclusion, in part:

> ... The listing agreement ... lists for sale the corporation.... [I]t was Plaintiff's diligence and efforts that brought the parties together, and, therefore, Plaintiff is entitled to the 5% commission regardless of the means selected to effect the sale....

*See McDonald & Company v. Kemper,* 386 S.W.2d 215, 217 (Tex.Civ.App.—Fort Worth 1965, no writ).

Other pertinent findings of fact which are not challenged are:

\* \* \* \* \* \*

(3) After October 3, 1978, and prior to October 23, 1978, the Defendant, Maurice Lamar, negotiated with and reached complete agreement as to all items and price with the prospective purchasers, Mowry and Bradshaw, as to price and terms of the sale of Star Supply Company.

\* \* \* \* \* \*

(6) Plaintiff, Robert D. Jones, procured within the time period specified in the listing agreement, pursuant to the terms of the listing agreement, a buyer(s) who was ready, willing, and able to purchase the Star Supply Co. on terms and at a price acceptable to Maurice Lamar (the President of Star Supply Co. and the person authorized to negotiate on behalf of Star Supply Co. both total sales price and all terms).

\* \* \* \* \* \*

(9) The failure to consummate the sale of Star Supply Co. was not due to any fault of Plaintiff-broker, Robert D. Jones, nor the prospective buyers, Mowry and Bradshaw.

The right to a commission is earned when the broker procures, within the specified time period of the listing agreement, a purchaser who is ready, willing, and able to purchase the property upon the terms contained in the listing agreement or upon terms and price agreeable to the owner. *Fleischer v. Levenson,* 418 S.W.2d 581, 583 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). *See Padre Sands, Inc. v. Cawood, supra.* We hold the listing agreement, executed by its president, bound the corporation to its terms regarding the commission when the buyers met the test stated. The evidence reflects this test was met. Point of error two is overruled.

■ We agree with appellants that, although the listing agreement was executed to sell the interests of the individual shareholders of the corporation, each owning 50% of the stock, the mere signing of the listing agreement by the president did not operate to make him individually liable for the brokerage commission. We sustain the third point of error.

■ The right and duty of courts to look beyond the corporate forms are exercised only for the defeat of fraud or wrong, or the remedying of injustice. *Atomic Fuel Extraction Corp. v. Estate of Slick,* 386 S.W.2d 180, 191 (Tex.Civ.App.—San Antonio 1964), *aff'd* 403 S.W.2d 784 (Tex.1966). (Citations omitted). The general rule in Texas is stated in *Torregrossa v. Szelc,* 603 S.W.2d 803, 804 (Tex.1980):

> Courts will not disregard the corporation fiction and hold individual officers, directors or shareholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, or to avoid the effect of a statute, or in a few other exceptional situations.

Plaintiff Jones had the burden of proof on the issue of alter ego. We find there was no pleading and no evidence presented of a sham corporate structure or perpetration of a fraud. *See Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 929 (Tex.App.—Houston [14th Dist.] 1982, no writ). The

allegations of plaintiff's petition in *Butler* included, in addition to breach of contract, conversion, fraud, willfully tortious acts and violation of the Texas Deceptive Trade Practices Act. Initially that plaintiff did not know of the corporation and sued Butler only in his individual capacity. Butler failed to plead that he had been sued in the wrong capacity. TEX.R.CIV.P. 93(c). He was found to be individually liable. The court noted it was not necessary to pierce the corporate veil because the corporate veil had never been raised.

In the present case Jones dealt openly with the corporation and its president, Lamar. In suing the corporation he based his suit on the listing agreement with the corporation which Lamar signed in his official capacity as president. We have already stated the purpose of the listing agreement was to sell the entire business.

■ In this instance the corporate veil had been raised from the beginning by Jones; no pleadings or proof support a reason for the court to pierce that corporate fiction. Where on the face of the pleadings the capacity of the defendant is plainly shown as president of the corporation, it would be anomalous to require that information in a verified plea of non-liability as an individual. We also believe Lamar's general denial placed in issue the question of his liability as an individual on the listing agreement. Nowhere do the terms of that contract nor the evidence demonstrate the parties understood the contract terms to encompass Lamar's individual liability. The mere fact that Lamar and Burns each owned 50% of the stock does not signify his individual liability. *Manney Co. v. Texas Reserve Life Insurance Co.*, 407 S.W.2d 345, 350 (Tex.Civ. App.—Dallas 1966, no writ). The signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract. *Robertson v. Bland,* 517 S.W.2d 676, 679 (Tex.Civ.App. —Houston [1st Dist.] 1974, writ dism'd). Accordingly, we hold that Lamar acted in his official capacity, as president only,

when he signed the listing agreement, and he did not thereby bind himself individually to pay the brokerage commission. We reverse and render that portion of the judgment. Costs are taxed three-fourths against appellants and one-fourth against appellees.

The judgment is reversed and rendered in part; affirmed in part.