Gregory L. PABICH, Appellant
and Appellee,

v.

Randy KELLAR, Appellee
and Appellant.

No. 2–00–105–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 28, 2002.

Bourland, Kirkman, Seidler & Evans, L.L.P.; David L. Evans and Thomas M. Michel, Fort Worth, Texas, Attorney for Appellant.

Miller & Brown, L.L.P.; J. Robert Miller and M. Jason Ankele, Dallas, Texas, Attorney for Appellee.

Panel A: DAY and HOLMAN, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION ON REHEARING

DAVID L. RICHARDS, Justice (Assigned).

### I. Introduction

We withdraw our opinion and judgment issued on October 11, 2001, and substitute the following in their place. We deny appellant's motion for rehearing.

Appellee Randy Kellar brought suit against appellant Gregory Pabich for tortious interference with a business relationship, breach of fiduciary duty, and fraud. The jury found for Kellar on all issues, and the judgment awarded him $3,083,273.97 in actual and exemplary damages, as well as $433,273.97 in prejudgment interest. Pabich challenges the jury's findings that he breached his fiduciary duty to Kellar and tortiously interfered with Kellar's business relationships, the finding of damages for those causes of action and Kellar's fraud action, and the trial court's failure to grant a new trial for juror misconduct. Kellar also cross appeals arguing the trial court

erred in not setting up a constructive trust in the judgment. We reverse and render.

### II. Factual and Procedural Background

Sometime in 1987, Pabich formed Preview Video Sales, Inc. Through this business Pabich bought used videos that were no longer rentable, reconditioned them, and resold them to stores. Preview began as a small business, but grew steadily. Kellar went to work for Preview and eventually was sold a 25% interest in it. In 1990 or 1991, Kellar and Pabich sued a potential buyer of Preview for breach of contract. The case settled for $400,000. Pabich received 75% of the proceeds, and Kellar received 25%. Shortly afterward, Preview ceased to do business.

Later, Pabich formed a new business, Movies 4 Sale, Inc. This business was involved in the buying, reconditioning, and selling of used video games. Kellar was hired by Movies 4 Sale to handle the administrative functions and was involved in setting up the computerization of the accounting programs and inventory tracking programs. When the business was setup, Pabich offered Kellar a 25% interest in it as long as Kellar paid a $250 subscription price. Kellar never paid the subscription price, but he was still treated as a shareholder.

Around January or February 1995, Pabich began to suspect that Kellar was embezzling money from Movies 4 Sale. He initiated an investigation before confronting Kellar and found that Kellar had falsified transactions by making fictitious payees. Kellar allegedly embezzled in excess of $750,000 from Movies 4 Sale.

Pabich confronted Kellar on March 20, 1995. Kellar admitted that he had been taking money from the company since October 1994 and that he knew the consequences of his actions. Pabich told Kellar

that he had spoken to his attorneys and the district attorney's office and that he would not press charges, file a civil suit, or turn Kellar over to the IRS if Kellar signed an agreement relinquishing his interest in the company and agreed to enter into a noncompetition agreement. Kellar asked if he would lose his interest in the stock, and Pabich told Kellar that he had no interest because he had never paid the subscription price. When the meeting concluded, Kellar and Pabich entered into a severance agreement and release of claims. Kellar was terminated for cause pursuant to his employment agreement and was entitled to no compensation beyond March 20, 1995. Kellar also unconditionally released the company from any claims and any money or equity due to him by the company, including any stock interest.

Shortly after his termination, Kellar entered into a business arrangement with Entertainment Options, Inc., a business that had represented Movies 4 Sale. Kellar along with Charlie McLaughlin and Willie Veldekamp formed Take 2 Enterprises, Inc. Movies 4 Sale, now a limited partnership, brought suit for violation of the severance agreement against Kellar and Take 2 Enterprises in Dallas County. Kellar and his wife filed suit in Tarrant County, and Entertainment Options filed suit in Michigan against Movies 4 Sale, Preview, Pabich, and other corporate entities. A counter-suit was filed in Michigan by Movies 4 Sale and others against Entertainment Options, McLaughlin, and Take 2.

The Dallas County and Michigan lawsuits settled in July 1998. One of the terms of the settlement agreement required that Entertainment Options, Take 2, McLaughlin, and Veldekamp disassociate themselves from Kellar and his affiliated entities. After the settlement, McLaughlin, Veldekamp, and Take 2

bought Kellar's interest in Take 2 for over $80,000. Criminal charges were also filed against Kellar in Dallas for unlawfully appropriating money from Preview and Movies 4 Sale. He was found guilty of theft over $20,000.

In the trial of this case, Kellar sought to obtain the value of his interest in Take 2 and the value of his ownership interest in Movies 4 Sale. Kellar alleged that Pabich breached his fiduciary duty to him by inducing him to sign the severance agreement and release; that he tortiously interfered with his business relationship with McLaughlin and Veldekamp by entering the settlement agreement in Michigan; and that he fraudulently misrepresented information that was material to the "fiduciary duty he occupied with" Pabich. The jury found for Kellar on the breach of fiduciary duty, fraud, and tortious interference with business relationship causes of action and awarded Kellar $3,083,273.97 in actual and exemplary damages.

## III. FIDUCIARY DUTY

In Pabich's first issue, he challenges the legal and factual sufficiency of the evidence to support the jury's finding that he breached his fiduciary duty to Kellar. He also argues that the trial court erred in instructing the jury that Pabich owed Kellar a fiduciary duty as a matter of law because they were shareholders of Movies 4 Sale, a closely held corporation.

■ A co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Kaspar v. Thorne*, 755 S.W.2d 151, 155 (Tex.App.-Dallas 1988, no writ); *Schoellkopf v. Pledger*, 739 S.W.2d 914, 920 (Tex.App.-Dallas 1987), *rev'd on other grounds*, 762 S.W.2d 145 (Tex.1988). Instead, whether such a duty exists depends

on the circumstances, e.g., if a confidential relationship exists. *Kaspar,* 755 S.W.2d at 155; *Schoellkopf,* 739 S.W.2d at 920.

 A confidential relationship exists where influence has been acquired and abused, and confidence has been reposed and betrayed. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992). A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship. *Dominguez v. Brackey Enters., Inc.,* 756 S.W.2d 788, 791–92 (Tex.App.-El Paso 1988, writ denied). However, the fact that the relationship has been a cordial one and of long duration does not necessarily constitute a confidential relationship. *Crim Truck,* 823 S.W.2d at 594; *Hallmark v. Port/Cooper T. Smith Stevedoring Co.,* 907 S.W.2d 586, 592 (Tex.App.-Corpus Christi 1995, no writ). A fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not alone indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required. *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex.App.-Houston [14th Dist.] 1994, writ denied), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). Whether a fiduciary relationship exists in any particular situation is usually a question for the fact finder. *Kaspar,* 755 S.W.2d at 155; *Schoellkopf,* 739 S.W.2d at 920.

On the issue of fiduciary duty, the trial court charged the jury as follows:

> Did Gregory L. Pabich *comply with his fiduciary duty* to Randy Kellar?

If they were shareholders of a corporation, Gregory L. Pabich owed Randy Kellar a fiduciary duty. To prove he complied with his duty, Gregory L. Pabich must show:

a. The transactions in question were fair and equitable to Randy Kellar;

b. Gregory L. Pabich made reasonable use of the confidence that Randy Kellar placed in him;

c. Gregory L. Pabich acted in the utmost good faith and exercised the most scrupulous honesty toward Randy Kellar;

d. Gregory L. Pabich did not use the advantage of his position to gain any benefit for himself at the expense of Randy Kellar, and did not place himself in any position where his self-interest might conflict with his obligations as a fiduciary; and

e. Gregory L. Pabich fully and fairly disclosed all important information to Randy Kellar concerning the transactions. [Emphasis added.]

 No issue was submitted to the jury inquiring whether Pabich owed a fiduciary duty to Kellar; rather, the trial court defined Pabich as a fiduciary as a matter of law and assumed the existence of a duty of acting with faithfulness and loyalty to Kellar. This instruction was erroneous. *See Kaspar,* 755 S.W.2d at 155; *Schoellkopf,* 739 S.W.2d at 920.

 Further, the record in this case does not support a finding that a fiduciary duty existed between Kellar and Pabich as a matter of law. Although the evidence shows that Kellar and Pabich worked together in several business ventures and that at one time they were also close friends, this evidence alone does not create a fiduciary duty as a matter of law. Kellar may have trusted Pabich, but his subjective trust does not create a fiduciary duty.

Their long-working relationship is clouded by Pabich's distrust of Kellar as well as other employees and company investors. The extent of Kellar's trust in Pabich may have also weakened in 1994 after Pabich told him he needed to stand behind Pabich in defense of "sexual harassment charges"; Kellar testified, "He basically told me that I couldn't be his partner anymore because if I wasn't loyal to him, there was no— there was no way I could be a partner of his any longer." We hold the trial court erred in charging the jury that Pabich owed Kellar a fiduciary duty as a matter of law. We sustain issue one.

### IV. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

In Pabich's second issue, he argues that the trial court erred in holding that because of the settlement in the Michigan lawsuit, he was liable for interference with Kellar's business relationship with McLaughlin and Veldekamp. Pabich enumerates several reasons that the trial court erred, including that Movies 4 Sale was the party to the settlement agreement, and not Pabich; that there was no basis for holding Pabich individually liable for the settlement agreement; and that the evidence was legally and factually insufficient to support the jury's finding with regard to intentional interference with a business relationship. We address Pabich's legal sufficiency challenge.

In his legal sufficiency claim, Pabich essentially argues that there is no evidence to support the verdict on the tort of intentional interference with a business relationship. In determining a "no-evidence" issue, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

In question one of the jury charge, the jury was asked, "Did Greg Pabich *by entering into the settlement agreement* in the Michigan lawsuit intentionally interfere with the business relationship between Charlie McLaughlin, Willie Veldekamp, and Randy Kellar?" [Emphasis added.] The jury answered "Yes" to the question. Based on this question, the basis of the alleged tort committed by Pabich was the act of "entering into the settlement agreement." Moreover, the question presumes that Pabich entered the settlement agreement in the Michigan lawsuit in his individual capacity. The evidence shows, however, that Pabich signed the settlement in

his capacity as "President" of Movies 4 Sale and not individually. Further, although Pabich was originally a party to the Michigan lawsuit, he was not named as a party to the settlement agreement.

Before the charge was submitted, Pabich objected to question one on the ground that there was no evidence to support its submission to the jury. The objection was overruled. Pabich also asserted in his last-filed, live answer that he was not liable in the capacity sued.

 Corporations, by their very nature, cannot function without human agents. *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex.1995). As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts. *Id.; see also Terry v. Zachry,* 272 S.W.2d 157, 160 (Tex.Civ.App.-San Antonio 1954, writ ref'd n.r.e.), *disapproved on other grounds, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). A corporation is a separate legal entity that normally insulates its owners or shareholders from personal liability. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986); *In re Morris,* 12 S.W.3d 877, 885 (Tex. App.-Texarkana 2000, no pet.). The courts will not hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations. *Bell Oil & Gas Co. v. Allied Chem. Corp.,* 431 S.W.2d 336, 339 (Tex.1968); *J & J Marine, Inc. v. Le,* 982 S.W.2d 918, 927 (Tex.App.-Corpus Christi 1998, no pet.).

 For example, "an officer or director [of a corporation] may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does

is for the best interest of the corporation." *Maxey v. Citizens Nat'l Bank,* 507 S.W.2d 722, 726 (Tex.1974). "Even the officers and directors of an ordinary corporation, while acting as such, are not personally liable even though they recommend a breach of a valid contract." *Id.* at 725 (quoting *Russell v. Edgewood Indep. Sch. Dist.,* 406 S.W.2d 249, 252 (Tex.Civ.App.-San Antonio 1966, writ ref'd n.r.e.)). If an officer is not necessarily liable for inducing his corporation to breach a contract, it follows that an officer would not necessarily be liable for inducing a corporation to enter a contract that would result in the intentional interference with the business relationship of another entity. *Cf. Holloway,* 898 S.W.2d at 796–98 (holding officer of corporation not liable for tortious interference with contract between his corporation and individual where there was no showing that officer acted in a fashion "so contrary to the corporation's best interests that his actions could only have been motivated by personal interests"; mere personal stake in outcome is not enough to hold officer liable).

The protection afforded individual shareholders and officers of corporations is also set forth in article 2.21 of the Texas Business Corporation Act:

A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to:

. . . .

(2) any contractual obligation of the corporation *or any matter relating to or arising from* the obligation on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual

fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate.

Tex. Bus. Corp. Act Ann. art. 2.21(A)(2) (Vernon Supp.2002) (emphasis added).

 The settlement agreement at issue in this case was signed by Pabich in his capacity as president of Movies 4 Sale. No evidence has been presented to us showing that Pabich ever acted in any manner other than as president of Movies 4 Sale when he entered the settlement. Kellar has also not presented any evidence indicating that Pabich ever used the corporation to perpetuate a fraud or that he was the alter ego of it. The fact that Pabich was the sole shareholder and president of the corporation does not necessarily make him liable under the contracts he signs on its behalf or the injuries resulting to others as a result of those contracts. *See id.; Star Supply Co. v. Jones,* 665 S.W.2d 194, 198 (Tex.App.-San Antonio 1984, no writ) ("The signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract."). Thus, there is no evidence to support holding Pabich personally liable under the settlement agreement.

 Our inquiry does not end, however, with the determination that Pabich is not liable for signing the settlement agreement as president of Movies 4 Sale because a corporate officer may still be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has either actual or constructive knowledge of the tortious con-

duct. *Portlock v. Perry,* 852 S.W.2d 578, 582 (Tex.App.-Dallas 1993, writ denied). Neither party disputes that Pabich knowingly entered into the contract. However, there has been no finding that Movies 4 Sale committed a tort in this case. Therefore, Pabich cannot be personally liable for tortious interference with Kellar's business relationship if he entered into the settlement agreement in his capacity as president for Movies 4 Sale and there is no finding that Movies 4 Sale did anything wrong. Furthermore, the alleged interference with business relationship in this case arose from the settlement agreement, a contractual obligation under article 2.21 of the Act. Tex. Bus. Corp. Act Ann. art. 2.21(A)(2). We hold there was no evidence to support the implied finding that Pabich individually entered the settlement agreement and, as a result, that he intentionally interfered with Kellar's business relationships. We sustain issue two.

## V. Damages

In issues three and four, Pabich challenges the jury's award of $750,000 for fraud, $750,000 for breach of fiduciary duty, and $150,000 for tortious interference with a business relationship. He argues that the evidence is legally and factually insufficient to support these awards. In light of our disposition of issue two, we do not address Pabich's challenge in issue four to the award of $150,000 in damages for interference with a business relationship. *See* Tex.R.App. P. 47.1.

In issue three, Pabich asserts that the award of $750,000 for breach of fiduciary duty and $750,000 for fraud are not supported by the evidence. Specifically, he argues that the value of Movies 4 Sale was a matter that required expert testimony because the determination of its value "was of such a technical or specialized nature that it was not within the common

knowledge or experience of the lay juror." He further argues that there was no evidence showing what the value of Movies 4 Sale was on the date the breach of fiduciary duty and fraud were committed, i.e., the date Kellar and Pabich entered into the Severance Agreement, March 20, 1995.

The jury was instructed at trial that if it found Pabich had failed to comply with his fiduciary duty and had committed fraud then it was to determine what sum of money would "fairly and reasonably compensate" Kellar for his damages resulting from the breach of fiduciary duty and fraud. In making this determination, the jury was instructed to consider only the "value of Randy Kellar['s] ownership interest, if any, in Movies 4 Sale, Inc. *as of the date of*" the breach of fiduciary duty and "such fraud." [Emphasis added.] Kellar alleged that Pabich breached his fiduciary duty to him and committed fraud when he induced him to enter into the Severance Agreement on March 20, 1995. The jury agreed. Pabich has not challenged the jury's finding of fraud.

▮▮▮ Ordinarily, in the absence of sales showing a market value for stock in a closely held corporation, the value of the stock is predicated upon the market value of the assets of the company after deducting its liabilities. *Williams v. Gaines*, 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied) (op. on reh'g); *Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 762 (Tex.App.-Corpus Christi 1988, writ denied). Book value is entitled to little, if any, weight in determining the value of a corporation's stock. *Bendalin v. Delgado*, 406 S.W.2d 897, 900–01 (Tex.1966); *Williams*, 943 S.W.2d at 192–93. Further, when calculating the value of stock in order to determine the amount of damages to award an injured party who had an ownership interest in the corporation, evidence of the value of the corporation at the time the alleged injury occurred is required. *See Bendalin*, 406 S.W.2d at 901; *Williams*, 943 S.W.2d at 193–94; *see also Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 500 (Tex.App.-Corpus Christi 1999, no pet.) (holding market value of property should have been shown as of the time of the conversion in order to determine proper measure of damages). The jury charge in this case required such a determination.

In support of the jury's determination of damages, Kellar argues that the evidence showed that fifteen months after the severance agreement was entered into, Hunt Capital purchased a 25% interest in Movies 4 Sale, i.e., Kellar's interest, for $3 million. In July 1994, the net income of Movies 4 Sale after distributions was $161,533. At that time, Pabich and Kellar were considering selling Movies 4 Sale, and a profit projection showed profits ranging from $4.5 million to $27 million. In 1996, Movies 4 Sale had revenues of $23.9 million. Evidence showed that Pabich testified that on December 31, 1996, the company was worth approximately $19 or $20 million. Pabich later revised the estimation to $8 million.

▮▮▮ Although the evidence indicates that Movies 4 Sale was a lucrative business during the time before and after the breach of fiduciary duty and fraud took place, Kellar has presented us no evidence regarding the value of Movies 4 Sale on March 20, 1995 or in 1995 in general. *See Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex.App.-Fort Worth 1996, writ denied). Thus, based on the instruction and question given to the jury, there was no evidence that would have enabled the jury to determine the value of Movies 4 Sale as of the "date of ... Pabich's failure to comply with his fiduciary obligation" or as of the "date of such fraud." Without such evidence, the award of $750,000 for breach

of fiduciary duty and the award of $750,000 for fraud are not supportable. We sustain Pabich's third issue.

In issue five, Pabich argues that the trial court erred by granting a judgment that allowed Kellar a double recovery for his ownership interest in Movies 4 Sale. Specifically, he challenges the jury's finding of damages in the amount of $750,000 for both fraud and breach of fiduciary duty. In light of our disposition of issue three, there is no need for us to address issue five. *See* Tex.R.App. P. 47.1.

## VI. JURY MISCONDUCT

In Pabich's sixth issue, he argues the trial court abused its discretion in not granting his motion for new trial based on jury misconduct. In a jury questionnaire form administered to the jury venire panel, the venire persons were asked if they or a close friend or relative had ever been involved in a criminal case before. In response, Juror Washington stated he had never been involved in a criminal matter when in fact, as it was later learned, he had been convicted for driving while intoxicated, a misdemeanor offense. Pabich argues that Washington's "misconduct" prejudiced the verdict, which was rendered by only ten jurors, one of whom was Washington, because evidence of Kellar's criminal conviction was admitted at trial.

▆▆▆▆ To obtain a new trial on the ground of jury misconduct, the complaining party must show that (1) misconduct occurred; (2) it was material; and (3) based on the record as a whole, the misconduct resulted in harm to him. *Doucet v. Owens–Corning Fiberglas Corp.*, 966 S.W.2d 161, 163 (Tex.App.-Beaumont 1998, pet. denied) (op. on reh'g), *cert. denied*, 526 U.S. 1131, 119 S.Ct. 1806, 143 L.Ed.2d 1009 (1999); *Ortiz v. Ford Motor Credit Co.*, 859 S.W.2d 73, 76 (Tex.App.-Corpus Christi 1993, writ denied); *see also* Tex.R.

Civ. P. 327(a). "A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion." *Sanchez v. King*, 932 S.W.2d 177, 180 (Tex.App.-El Paso 1996, no writ) (relying on *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983)).

▆▆▆▆ A motion for new trial based on jury misconduct must be supported by a juror's affidavit alleging that "outside influences" affected the jury's decision. *Weaver v. Westchester Fire Ins. Co.*, 739 S.W.2d 23, 24 (Tex.1987); *Mitchell v. S. Pac. Transp. Co.*, 955 S.W.2d 300, 322 (Tex.App.-San Antonio 1997, no writ). A non-juror's affidavit is not sufficient to establish material jury misconduct because the affidavit is based on hearsay. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 828 (Tex. App.-Dallas 1986, writ ref'd n.r.e.); *Tenngasco Gas Gathering Co. v. Fischer*, 624 S.W.2d 301, 305 (Tex.App.-Corpus Christi 1981, writ ref'd n.r.e.). For example, the affidavits of counsel do not satisfy the requirements of rule 327(a). Tex.R. Civ. P. 327(a); *Clancy*, 705 S.W.2d at 828.

▆▆▆▆ Pabich's motion for new trial is not supported by an affidavit of a juror. Thus, Pabich presented no evidence to the trial court showing an "outside influence" on the jury as a result of Washington's false statement. We hold the trial court did not abuse its discretion in denying Pabich's motion for new trial and overrule issue six.

## VII. KELLAR'S CROSS APPEAL

On cross appeal, Kellar complains about the trial court's failure to include a constructive trust in the final judgment. In light of our disposition of Pabich's issues on appeal, we do not need to address this issue. *See* Tex.R.App. P. 47.1.

511

## VIII. Conclusion

Having sustained Pabich's first through fourth issues, we reverse the judgment of the trial court. Because there was no evidence showing that Pabich tortiously interfered with the business relationship between Kellar and Veldekamp, and because there was no evidence to support the damages awards for breach of fiduciary duty and fraud, we render judgment for Pabich on Kellar's claim that Pabich tortiously interfered with Kellar's business relationship and render a take-nothing judgment for Kellar on his claims for breach of fiduciary duty and fraud. We also reverse the trial court's award of exemplary damages to Kellar and render a take-nothing judgment on exemplary damages. *See Nabours v. Longview Sav. & Loan Ass'n,* 700 S.W.2d 901, 903 (Tex. 1985); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.,* 17 S.W.3d 721, 732 (Tex. App–Austin 2000, pet. denied).