**Opinion filed June 14, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-16-00137-CV

_____

## KAHEEL PROPERTIES, LLC AND ABDULLAH KAHEEL, Appellants

## V.

## AZTECA ENTERTAINMENT ENTERPRISES, INC. AND ARTURO NERI, JR., Appellees

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 19,451**

## M E M O R A N D U M  O P I N I O N

Azteca Entertainment Enterprises, Inc. and Arturo Neri, Jr. sued Kaheel Properties, LLC and Abdullah Kaheel (Kaheel)[1] for breach of duty of ordinary care, common law fraud, and statutory fraud that arose out of a purported agreement in

---

[1]We collectively refer to both Kaheel Properties and Kaheel as "Kaheel," unless otherwise specified.

which Neri agreed to convey certain properties to Kaheel in exchange for Kaheel's commitment to form a partnership with Neri. The jury found that both Kaheel and Kaheel Properties committed common law fraud and statutory fraud and awarded Neri actual damages and attorney's fees. On appeal, Kaheel presents four issues. We reverse and remand for a new trial.

## I. *Evidence at Trial*

Arturo Neri, Jr. lived in Sweetwater and operated Azteca. Neri's father operated a business in California, Neri Runway International, which sold evening dresses wholesale to clients all over the world. In 2009, after Neri's father suffered various health ailments, Neri traveled to California to help his father operate Neri Runway International. Once Neri arrived in California, Kaheel, who had done business with Neri's father, made a proposition to buy out Neri's father's business partner, Veronica Bodarth, whose relationship with Neri's father had deteriorated. Kaheel suggested that he and Neri Runway International each give $50,000 to Bodarth to buy her out, which they did. Neri Runway International also owed a debt of almost $600,000 to Kaheel, which it was repaying. In May 2009, to provide security to Kaheel for the debt, Neri signed two deeds of trust to Kaheel for two California properties that the Neri Family Living Trust owned. Neri was the trustee of the Trust.

Neri testified that, in 2012, Kaheel began to talk to him about the possibility of the two of them forming a partnership. Neri believed that Kaheel "was a wealthy and powerful man" and that Kaheel's offer of a partnership was therefore a good offer. Neri testified that Kaheel told him that, in exchange for entering into a partnership, Kaheel "would need security on the properties or deeds on the properties." On August 22, 2012, Neri, as trustee of the Neri Family Living Trust, signed a warranty deed in which he conveyed the property in Sweetwater, out of

which Azteca operated, to Kaheel Properties. Neri testified that he conveyed the Sweetwater property "solely based on that promise" to form a partnership.

Neri said that after he conveyed the Sweetwater property, Kaheel never formed a partnership with him. Neri said that when he asked Kaheel about the partnership, Kaheel would tell him that he "w[ould] take care of everything as [he] promised [him]." Neri said that, eventually, Kaheel told him that he needed to sign a settlement and reaffirmation agreement before Kaheel would form the partnership. On April 26, 2013, Neri signed the settlement and reaffirmation agreement for himself, as trustee of the Trust; for his father, as president of Neri Runway International; and for his father a second time, as the guarantor. Kaheel signed the settlement and reaffirmation agreement the same day, in his capacity as the president of Kaheel Properties. The document contained the following:

> **WHEREAS**, since NERI has failed to make payments to KAHEEL on the debt secured by the Deeds of Trust with Assignment of Rents on the two [California] real properties, NERI has agreed to voluntarily transfer title and ownership interest in both real properties to KAHEEL in lieu of foreclosure by KAHEEL.

Neri said that Kaheel never entered into a partnership agreement with him, gave him a line of credit, or gave him any money for the properties. Neri then sued Kaheel for, among other claims, common law fraud and statutory fraud. The case was tried to a jury. The jury charge defined "Neri" to include both Neri, individually, and the Neri Family Living Trust. The jury found that Kaheel and Kaheel Properties had committed common law fraud and statutory fraud against Neri.[2] With respect to Kaheel, the jury awarded Neri $294,460 in actual damages plus interest, in addition to $197,784 in attorney's fees. With respect to Kaheel Properties, the jury

---

[2]Kaheel states on appeal, and the record reflects, that Neri elected to recover under his statutory fraud cause of action.

3

awarded Neri $430,460 in actual damages plus interest, in addition to $197,784 in attorney's fees.

## II. *Analysis*

In Kaheel's first issue on appeal, he contends that the trial court erred when it did not "act on its own volition to declare a mistrial" in response to a portion of Neri's counsel's closing argument. In his second and third issues, Kaheel argues that the evidence is legally and factually insufficient, respectively, to support the jury's findings of common law fraud and statutory fraud, damages, and attorney's fees. In Kaheel's fourth issue, he argues that the trial court erred when it denied his motion for new trial. We will address Kaheel's second and third issues.

A. <u>*Issue Two*</u>: *Neri adduced legally sufficient evidence that Kaheel and Kaheel Properties committed statutory fraud and common law fraud.*

In his second issue, Kaheel asserts that the evidence was legally insufficient to support the jury's findings that Kaheel committed common law fraud and statutory fraud against Neri. As we explain below, we disagree.

### 1. *Standard of Review*

We will sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.

*Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

### 2. Elements of common law fraud and statutory fraud

The elements of common law fraud are as follows: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the person who made it knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party did act upon it; and (6) the party thereby suffered injury. *Fraser v. Purnell*, No. 05-13-01269-CV, 2015 WL 4481702, at *3 (Tex. App.—Dallas July 23, 2015, pet. denied) (mem. op.).

The elements of statutory fraud are as follows: (1) a transaction that involves real estate or stock; (2) the defendant made a false representation of a past or existing material fact or made a promise to do an act with the intention of not fulfilling it; (3) the defendant made the false representation or promise for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract. *Id.* at *4; *see* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (West 2015).

*3. Neri's testimony that Kaheel promised to form a partnership with Neri if Neri conveyed the three properties to Kaheel was legally sufficient evidence that Kaheel committed fraud.*

Neri testified that Kaheel told him that Kaheel would enter into a business partnership with him if he conveyed the Sweetwater property to Kaheel and if he signed the settlement and reaffirmation agreement, in which Neri would also convey to Kaheel the two California properties. Neri testified that he relied on this promise when he signed those documents.

Neri testified that Kaheel never entered into a partnership with him or gave him any money in return for the properties. Kaheel argues on appeal that Neri's testimony that concerned Kaheel's verbal representations to him violated the parol evidence rule and the statute of frauds and is not evidence that a contract existed. However, we note that such evidence may be introduced into evidence in order to prove that Kaheel fraudulently induced Neri to sign the contracts. *See ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 n.11 (Tex. App.—Eastland 2007, pet. denied) ("Extrinsic evidence is admissible to show . . . the execution of a written document was procured by fraud."); *see also Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 615–16 (Tex. App.—Waco 2000, pet. denied) (holding that jury could properly consider evidence of bank's verbal statements as evidence it fraudulently obtained individuals' signatures on documents because "the parol evidence rule was never intended to exclude proof of . . . fraud" (quoting *Roy Klossner Co. v. McIntire*, 301 S.W.2d 197, 200 (Tex. Civ. App.—San Antonio 1957, writ ref'd n.r.e.))). Therefore, we hold that Neri produced more than a scintilla of evidence that Kaheel and Kaheel Properties committed common law fraud and statutory fraud against Neri.

*4. Neri adduced legally sufficient evidence that Kaheel committed fraud against Neri and the Trust.*

Kaheel argues that Neri and the Trust alleged that Kaheel misrepresented his intention to become partners with Neri, individually. Kaheel also argues that, because the properties conveyed in this matter were owned by the Trust and not by Neri, individually, any damages award belonged to the Trust. The jury charge included the following definition: "Arturo Neri Jr. as used in this charge includes Arturo Neri, Jr., Individually, and the Neri Family Living Trust." Kaheel did not object to that definition. Therefore, we analyze the charge based on that instruction. As we noted earlier, Neri adduced evidence that Kaheel made misrepresentations about forming a partnership in return for deeds to properties owned by the Trust. In addition, Neri was the trustee for the Trust. We disagree with Kaheel's arguments that the evidence was legally insufficient to prove the elements of fraud or statutory fraud with regard to both Neri and the Trust.

*5. Neri adduced legally sufficient evidence that Kaheel and Kaheel Properties committed fraud against Neri and the Trust.*

Kaheel argues that "Appellees failed to present evidence . . . showing that Kaheel was the agent for Kaheel Properties, was the alter ego of Kaheel Properties, that Kaheel Properties ratified the conduct of Kaheel, or that Kaheel and Kaheel Properties were co-conspirators," and that Neri therefore failed to produce legally sufficient evidence of fraud or statutory fraud.

"As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Pabich v. Kellar*, 71 S.W.3d 500, 507 (Tex. App.—Fort Worth 2002, pet. denied) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)). "A corporation is a separate legal entity that normally insulates its owners or shareholders from personal liability." *Id.* (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)), *superseded on other grounds by*

7

*statute*, TEX. BUS. ORGS. CODE ANN. § 21.223 (West 2012); *In re Morris*, 12 S.W.3d 877, 885 (Tex. App.—Texarkana 2000, no pet.)). "The courts will not hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." *Id.* (citing *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex. 1968)).

Kaheel signed the settlement and reaffirmation agreement in a corporate capacity, and the terms of the agreement specified that it was between Neri "and KAHEEL PROPERTY, LLC, under assignment from KAHEEL INTERNATIONAL, INC." Similarly, in the warranty deed for the Sweetwater property, Neri conveyed the property to Kaheel Properties. Normally, "[t]he signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract." *Star Supply Co. v. Jones*, 665 S.W.2d 194, 198 (Tex. App.—San Antonio 1984, no writ). Additionally, the fact that an individual is the "president of [a] corporation does not necessarily make him liable under the contracts he signs on its behalf or the injuries resulting to others as a result of those contracts." *Pabich*, 71 S.W.3d at 508. However, because Neri asserted that Kaheel used his corporate entity to perpetrate a fraud, we hold that Kaheel and Kaheel Properties could be considered the same party in this case. *See Pabich*, 71 S.W.3d at 507. Therefore, we hold that Neri produced legally sufficient evidence for common law and statutory fraud as to both Kaheel Properties and Kaheel.

> *6. Neri adduced legally sufficient evidence of the damages that were awarded, and when those damages were incorporated into the judgment, the damages did not violate the one-satisfaction rule.*

Kaheel contends that Neri's recovery against both Kaheel and Kaheel Properties was not supported by the evidence and violated the one-satisfaction rule. Because we have already held that Kaheel and Kaheel Properties may be considered the same entity in this case, Neri only needed to produce sufficient evidence of injury to support the total amount of actual damages of $724,920 that the jury awarded. Neri adduced evidence that Kaheel promised that Neri would make enough money to pay the debt of $966,979.43 in the first year of the partnership, that the two properties in California were worth $1.5 million and $500,000, and that the California house had a mortgage of $550,000. The Sweetwater property, which was not encumbered, was worth over $250,000, according to the local appraisal district. The Azteca business and property were valued at $750,000 to one million dollars. We hold that Neri adduced legally sufficient evidence to support the jury's damage awards. We now address Kaheel's double recovery argument.

Kaheel asserts that the judgment violated the one-satisfaction rule and allowed a double recovery. A plaintiff is entitled to one recovery for any damages suffered because of a particular injury. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991). A double recovery happens when a judgment awards a plaintiff more than one recovery for the same injury. *Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 263 (Tex. App.—Dallas 2014, no pet.) (citing *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam)). A party may seek damages based on alternative theories, but it is not entitled to a double recovery. *See Waite Hill Servs.*, 959 S.W.2d at 184; *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 64 (Tex. App.—Houston [1st

9

Dist.] 2013, pet. denied); *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  When a remedy compensates for a separate and distinct injury, however, then it is not duplicative of another remedy.  *Madison*, 241 S.W.3d at 158; *accord Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987).  For example, a damages award that compensates a plaintiff for past damages combined with relief to prevent future damages does not constitute a double recovery.  *Halliburton Energy Servs.*, 444 S.W.3d at 263; *accord Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 76–77 (Tex. App.—San Antonio 2011, no pet.).  We hold that the judgment does not violate the one-satisfaction rule.  We overrule Kaheel's second issue.

B. *Issue Three: Neri adduced evidence that is factually insufficient to support the verdict and the judgment.*

In his third issue, Kaheel argues that Neri produced factually insufficient evidence to support the jury's findings that Kaheel committed common law fraud and statutory fraud and adduced factually insufficient evidence of damages and attorney's fees.  We address the factual insufficiency arguments on common law fraud and statutory fraud first.

*1. Standard of Review*

When we review an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.  *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

*2. Neri's own exhibits do not support his testimony that Kaheel formed a partnership with him or that he relied on such representations to do so.*

At trial, Neri testified that he conveyed the Sweetwater property to Kaheel in 2012 and deeded the two California properties to Kaheel in 2013 in exchange for Kaheel's promise to form a partnership with him. Neri testified that Kaheel made those representations to him as far back as 2012, before Neri deeded him the Sweetwater property, and continued up until Neri and Kaheel signed the settlement and reaffirmation agreement on April 26, 2013.

Neri testified that the only reason that he signed the documents in which he deeded the three properties to Kaheel was because Kaheel promised to form a partnership with him. However, there was no mention of a partnership in any of the conveyance documents that Neri signed. In fact, the settlement and reaffirmation agreement explicitly stated that Neri was conveying the California properties to Kaheel "in lieu of foreclosure" because Neri had failed to make payments on Neri Runway International's debt to Kaheel. Neri also claimed that two pieces of documentary evidence proved that Kaheel fraudulently induced him to convey the properties and that he relied on Kaheel's representations for two reasons.

First, Neri introduced into evidence an account statement that Kaheel's company sent to Neri Runway International. The statement shows that for May 7, 2012, Neri Runway International owed $863,459.43. For the next—and last—date on the statement, September 10, 2012, Neri Runway International owed $966,979.43. The statement did not reflect that Neri Runway International had made any payments to Kaheel between those two dates. Neri testified at trial that the statement does not "reflect anything about any credit for [the Sweetwater] property." However, the statement was dated August 13, 2012, nine days before Neri conveyed the Sweetwater property to Kaheel. Neri did not introduce into evidence another

later statement to show that Kaheel did not give Neri any credit for the Sweetwater property.

Second, Neri introduced into evidence an e-mail that Kaheel sent to Neri on May 13, 2013, in which Kaheel offered various terms to which Neri would have to comply in order for Kaheel not to file the two deeds in lieu of foreclosure for the California properties. After Kaheel outlined his proposed terms in the e-mail, Kaheel wrote the following:

> This agreement is for a three year period, and after the three year period, if you pay off our debt with interest you have with me, I will return the properties to your name without taking any additional profit.
>
> If you feel the above conditions are not of any convenience for you, you can start to sell the properties in the upcoming six month period and pay off the debt. It is for you to take the decision, and reply me [sic] with an answer.
>
> If you agree to accept the above offer, I will establish a new company selling evening dresses. From this new company, you will get 40% of the net profit in hold to help you pay off part of your debt within the three year period.

In his testimony, Neri cited the last paragraph as proof that Kaheel had offered Neri a partnership. Intent to induce reliance, most often, must be proven by circumstantial evidence. *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric,* 708 S.W.2d at 434. However, Kaheel does not reference a past partnership offer; Kaheel says that he "will establish a new company" if Neri "accept[s] the . . . offer" in the e-mail. He does not say that "we" will establish a new company; he also does not mention establishing a partnership in any of the documents. Therefore, the e-mail—sent after

12

all of the documents, including the settlement and reaffirmation agreement, were signed—is not evidence that Kaheel offered to form a partnership with Neri in exchange for the three properties that Neri conveyed to Kaheel.

We note that an actionable false misrepresentation cannot be the promise of future rents or income, as they are generally statements of opinion rather than fact. *See Tukua Investments, LLC v. Spenst*, 413 S.W.3d 786, 800 (Tex. App.—El Paso 2013, pet. denied) (citing *Starnes v. Motsinger,* 278 S.W. 496, 498 (Tex. Civ. App.— El Paso 1925, no writ)). In addition, "[i]n measuring justifiability, we must inquire whether, 'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part.'" *Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 373 (Tex. App.—Fort Worth 2012, pet. denied) (alteration in original) (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). "In other words, a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Druce*, 369 S.W.3d at 373 (citing *Grant Thornton LLP*, 314 S.W.3d at 923).

In this case, Neri's two pieces of written evidence do not mention any partnership and cannot be used to factually support the reliance element of common law and statutory fraud where the transfer of property for preexisting debt had occurred before the e-mail with the alleged promise of a new company. *Cf. Druce*, 369 S.W.3d at 373 (holding jury could have found from adduced evidence that purchaser justifiably relied on inflated rent rolls and entered into purchase contract based on those misrepresentations). Based upon this court's review of all the evidence in this case, we hold that the evidence is too weak to support the jury's finding that Kaheel committed common law fraud and statutory fraud. Accordingly, we sustain Kaheel's third issue on appeal.

### III. *Conclusion*

We hold that the evidence is factually insufficient to support the verdict of the jury and the judgment of the trial court. We need not address Kaheel's first and fourth issues. *See* TEX. R. APP. P. 47.1. We also do not need to address whether there was factually sufficient evidence as to damages or attorney's fees. *See id.*

### IV. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for a new trial.

MIKE WILLSON

JUSTICE

June 14, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[3]

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.