**Artie G. KINGSTON, Appellant,**

v.

**John F. HELM, Greenway Development, Inc., and Real Estate Investment Corporation, Inc., Appellees.**

No. 13–00–327–CV.

Court of Appeals of Texas, Corpus Christi.

July 25, 2002.

Rehearing Overruled Sept. 5, 2002.

Vaughan Waters, Thornton, Summers, Biechlin, Dunham & Brown, Corpus Christi, for appellant.

David A. Sibley, Deborah R. Sundermann, Joseph E. Garcia, III, Corpus Christi, for appellee.

Before Justices DORSEY, HINOJOSA, and CASTILLO.

## OPINION

Opinion by Justice DORSEY.

The issue in this case is whether John F. Helm may be held individually liable for conduct he undertook while acting as a representative for Greenway Development, Inc. We hold that the trial court erred by holding that Helm may not be held so liable. Accordingly, we reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

Artie Kingston sued John F. Helm for fraud, DTPA, and negligent misrepresentation stemming from a transaction wherein Kingston purchased a town home unit from Greenway Development, Inc. (GDI). In that transaction, Kingston spoke with both a sales agent for GDI and with Helm, who is the president of GDI. Kingston alleges that Helm personally made false representations to him regarding the town home. The actual real estate sales contract was between GDI and Kingston, with Helm signing the sales contract on behalf of GDI, apparently in his capacity as a corporate officer.

The case went to trial. After Kingston presented his case, the trial court entered a directed verdict that Kingston take nothing against Helm in his individual capacity. That order stated that the evidence was insufficient as a matter of law to find Helm liable in his individual capacity. Kingston appeals this judgment.

## STANDARD FOR REVIEWING DIRECTED VERDICT

A directed verdict is appropriate when reasonable minds can draw only one conclusion from the evidence. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Villarreal v. Art Inst. of Houston, Inc.*, 20 S.W.3d 792, 796 (Tex.App.-Corpus Christi 2000, no pet.). Where the plaintiff fails to present evidence in support of a fact essential to her right to recover, or where a defense against the plaintiff's cause of action is conclusively proved or admitted, a directed verdict for the defendant is proper. *Villarreal*, 20 S.W.3d at 796. On review, we examine the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Qantel Bus. Sys. v. Custom Controls*, 761 S.W.2d 302, 303–04 (Tex.1988); *Villarreal*, 20 S.W.3d at 796. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Villarreal*, 20 S.W.3d at 796. When no evidence of probative force on an ultimate fact element exists, or when the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Id.* Moreover, the reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided it can be supported on another basis. *Id.*

## APPLICATION

Neither party to this appeal argues that there is no evidence to support Kingston's allegations that Helm made certain misrepresentations to him regarding the town home. Rather, both sides agree that the only question presented is whether Helm may be held liable for any such alleged misrepresentations in his individual capacity, or whether he is shielded from individual liability because he was acting solely as an agent of a corporation and not as an individual.

The appellee makes essentially two arguments. First, Helm argues that he was acting solely in his capacity as corporate officer, and, therefore, liability may only attach to the corporation, and not to him individually. Next, Helm argues that article 2.21 of the Texas Business Corporations Act now requires that the corporate veil be pierced in order to hold him individually liable for the causes of action alleged in Kingston's suit. We disagree with both propositions.

## I. HELMS'S STATUS AS AGENT FOR GDI DOES NOT INSULATE HIM FROM PERSONAL LIABILITY FOR HIS OWN TORTIOUS CONDUCT.

Generally, a corporate officer's acts on the corporation's behalf are deemed to be acts of the corporation. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117–18 (Tex.1996). Still, the longstanding rule in Texas is that "[a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984).[1]

---

1. *Accord Light v. Wilson*, 663 S.W.2d 813, 815 (Tex.1983) (Spears, J., concurring); *Taiwan Shrimp Farm v. U.S.A. Shrimp Farm*, 915 S.W.2d 61, 73 (Tex.App.-Corpus Christi 1996, writ denied); *McIntosh v. Copeland*, 894 S.W.2d 60, 63 (Tex.App.-Austin 1995, writ denied); *Holberg v. Teal Constr. Co.*, 879 S.W.2d 358, 360 (Tex.App.-Houston [14th

The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation. *See, e.g., Commercial Escrow Co. v. Rockport Rebel, Inc.,* 778 S.W.2d 532, 541 (Tex.App.-Corpus Christi 1989, writ denied).[2] In fact, this Court has stated:

> A corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. It is not necessary that the 'corporate veil' be pierced in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing.

*Id.* at 541. While this legal principle remains intact, a series of Texas Supreme Court cases decided in the 1980's have left the law in this particular area a bit muddled.

### A. The Texas Supreme Court has held that Corporate Agents May Be Held Individually Liable for their Own DTPA Violations.

In a 1985 case, the Texas Supreme Court specifically affirmed the principle that DTPA misrepresentations made by a corporate agent can subject the agent to individual liability. *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985). The court held that two corporate officers found to have made representations that violated the DTPA could be held individually liable for those representations, even though the representations were made in the course of a business transaction conducted in the course and scope of their employment with the corporation. *Weitzel,* 691 S.W.2d at 601; *see also Kinkler v. Jurica,* 84 Tex. 116, 19 S.W. 359 (1892); *Seale v. Baker,* 70 Tex. 283, 7 S.W. 742 (1888). Liability was predicated on the fact that the tortious conduct was committed by the agents themselves. *Weitzel,* 691 S.W.2d at 601.

The *Weitzel* court affirmed a legal principle that had been impliedly recognized in a case decided two years earlier, *Glen W. Light v. J.M. Wilson,* 663 S.W.2d 813 (Tex. 1983). In *Light,* the customer of a home building corporation brought DTPA and fraud actions against the corporation and the corporation's sole owner. *Id.* at 813. The trial court held both Light, individually, and his solely owned corporation jointly and severally liable for the damages. *Id.* The court of appeals affirmed the trial court's judgment, but the supreme court reversed, holding that because Light was not personally involved in the actual business transaction wherein the DTPA violations were committed, he could not be held personally liable for the damages that re-

---

Dist.] 1994, no writ); *Portlock v. Perry,* 852 S.W.2d 578, 582 (Tex.App.-Dallas 1993, writ denied); *Remenchik v. Whittington,* 757 S.W.2d 836, 839 (Tex.App.-Houston [14th Dist.] 1988, no writ) (noting that "[i]n these circumstances, it is not necessary that the corporate veil be pierced or even discussed"); *Great Amer. Homebuilders, Inc. v. Gerhart,* 708 S.W.2d 8, 10–11 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.).

**2.** *Accord Keyser v. Miller,* 47 S.W.3d at 730–31; *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 221 (Tex.App.-Waco 1993, writ denied) (hold-

ing corporate agent liable for "knowing" participation in misappropriation); *Grierson v. Parker Energy Partners,* 737 S.W.2d 375, 377–78 (Tex.App.-Houston [14th Dist.] 1987, no writ) (holding corporate agent can be held personally liable if agent knowingly breached fiduciary duty); *Barclay v. Johnson,* 686 S.W.2d 334, 336–37 (Tex.App.-Houston [1st Dist.] 1985, no writ) (holding corporate agent personally liable for false representations); *Great American Homebuilders, Inc. v. Gerhart,* 708 S.W.2d at 10–11; *see also* RESTATEMENT (SECOND) OF AGENCY § 348 (1958).

sulted therefrom. *Id.* at 814–15. The court reasoned that absent pleading and proof supporting some method of piercing the corporate veil, Light, a mere officer of the corporation, could not be held personally liable for the DTPA violations made by an agent of the corporation. *Id.* While the corporation was liable for the agent's conduct, Light was not. *Id.* Though this case did not specifically address the question of whether Light *could have been* held personally liable if he *had* made the representations himself, its reasoning seemed to imply that he could.

Certainly Justice Spears, in his concurring opinion, believed that to be the case, stating:

> The rule in Texas has always been that an agent is personally liable for his own torts. This rule also applies when the agent is an officer or shareholder of the principal corporation.
>
> Liability in these cases is based on the agent's own actions, not his status as agent. There is no sound reason to treat agents differently when they violate the Deceptive Trade Practices Act. It is not relevant that the contract was with the corporation....

*Id.* at 815 (Spears, J., concurring) (internal citations omitted). We believe that to be a correct statement of the current law.

However, in *Light,* the supreme court did not expressly overrule another case handed down earlier that year which squarely contradicts the position taken by Justice Spears in his concurrence. In *Karl & Kelly Co. v. McLerran,* the court held that two individual corporate officers could *not* be held individually liable for DTPA violations because "any representations made by [the officers] were made as agents of the corporation," and some evidence that the corporation was used as the officers' alter ego would have to be presented in order to hold the officers individ-

ually liable. *Karl & Kelly Co.,* 646 S.W.2d 174, 175 (Tex.1983). When the Court decided *Light* ten months after handing down its decision in *Karl & Kelly Co.,* the majority did not address *Karl & Kelly Co.* However, Justice Spears was unequivocal in his concurrence, stating:

> *Karl & Kelly Co.* was wrongly decided. This court held that when the contract was with the corporation, the agents were not personally liable for their own violations of the Deceptive Trade Practices Act, absent evidence that the corporation was merely their alter ego. The opinion inadvertently overlooked the import of our numerous common law decisions holding agents liable for their own misconduct, and the argument was neither briefed nor raised on the motion for rehearing.
>
> Although considerations of *stare decisis* would normally counsel against overruling an opinion of this court after such a short time, a clearly erroneous decision should be corrected.

*Light,* 663 S.W.2d at 815 (Spears, J., concurring).

Even though the court made the statement in its subsequent *Weitzel* opinion that it was "implicit in [its] holding in [*Light* ] that there *can be* individual liability on the part of a corporate agent for misrepresentations made by him," *Weitzel,* 691 S.W.2d at 601 (emphasis added), *Karl & Kelly Co.* has never been expressly overruled, continues to be cited as authority, and this has caused some confusion regarding the issue. *See, e.g., Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex.1996) (citing *Karl & Kelly Co.* for the proposition that individual liability arises only when a corporate officer or agent owes an "independent duty of reasonable care to the injured party apart from the employer's duty"); *Keyser v. Miller,* 47 S.W.3d 728, 729–30 (Tex.App.-Houston [1st Dist] 2001),

*pet. granted,* (Tex. Mar. 21, 2002) (noting that the supreme court has, to date, not expressly overruled *Karl & Kelly* ); *Menetti v. Chavers,* 974 S.W.2d 168, 172 (Tex. App.-San Antonio 1998, no pet.) (relying on *Karl & Kelly Co.* in holding that corporate officers cannot be held individually liable for their own DTPA and fraud without some piercing of the corporate veil); *Baker v. Computer Learning Ctr., Inc.,* No. 14–00–00671–CV, —— S.W.3d ——, ——, n. 5, 2001 WL 421527, at *4, 2001 Tex.App. LEXIS 2748, at *10–11, n. 5 (Tex.App.-Houston [14th Dist.], April 26, 2001) (not yet released for official publication) (noting that *Weitzel* was a departure from cases that hold only "knowing" violations of the DTPA or knowing misrepresentations can subject the agent to individual liability).

◼ We believe that the analysis in *Weitzel* and in Justice Spears' concurrence in *Light* governs the outcome of this case. We hold that Kingston was not required to pierce the corporate veil to hold Helm liable in his individual capacity. Rather, Helm may be held to answer individually for his own tortious conduct. Accordingly, the trial court erred in not allowing the jury to make fact findings on Kingston's allegations of misrepresentation.

### B. Cases Absolving a Corporate Agent from Personal Liability for Negligent Conduct or Interference with Contract Do Not Apply to this Case, which is Based on Allegations of Fraud, Misrepresentation and DTPA Violations.

Another line of cases holds that corporate officers and agents may not be held individually liable for tortious conduct when acting solely within the course and scope of the agent's employment. *See e.g., ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 432 (Tex.1997) (holding that corporate officer may not be personally liable for causing corporation to breach contract with another so long as officer acted in good faith); *Leitch,* 935 S.W.2d at 117–18 (holding that corporate agents may not be individually liable for failing to provide proper safety equipment and safe work environment to subordinate employee); *see also Keyser,* 47 S.W.3d at 732 (sales agent not personally liable for DTPA misrepresentations because they were not "knowing" or "intentional"). These cases involve attempts to hold a corporate agent liable for conduct that is more in the nature of the usual and customary duties required by the particular job.

◼ The first type of cases are those based on negligent conduct of the corporate agent. The rule regarding individual liability for negligence in the employment context is that a corporate officer or agent can be liable to others, including other company employees, for his or her own negligence *only* when the officer or agent owes an "independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch,* 935 S.W.2d at 117. In *Leitch v. Hornsby,* the Supreme court held that two officers of a corporation could not be held individually liable for an employee's injury. *See id.* at 117–18.

In *Leitch,* Mr. Hornsby sued his employer, Pro Com, and some of its officers for damages that resulted from an injury he sustained while unloading equipment from a truck without a lift belt or other safety equipment. *Id.* at 114. The jury found that Pro Com *and* the two officers were each negligent and their negligence proximately caused Hornsby's injuries. *Id.* at 116. The trial court entered judgment holding all three jointly and severally liable. *Id.*

The court of appeals affirmed the trial court's judgment, holding that a corporate

officer may be personally liable for corporate wrongdoing when that officer is an "active participant in the tortious conduct or has actual or constructive knowledge of the corporation's tortious conduct." *Id.* at 116; *see Leitch v. Hornsby,* 885 S.W.2d 243, 249–50 (Tex.App.-San Antonio 1994), *rev'd, Leitch,* 935 S.W.2d 114 (Tex.1996). Thus, the court of appeals concluded, no finding of alter-ego was necessary to pierce the corporate veil and impose personal liability on the corporate officers because the officers were merely being held liable for their own negligent conduct. *Leitch,* 885 S.W.2d at 249.

The supreme court held that went too far. *Leitch,* 935 S.W.2d at 117. The court noted that while an employer does have a duty to use ordinary care in providing a safe work place for its employees, that duty is imposed upon the corporation itself, and not upon the individual corporate officers. *Id.* The court explained that the duty to provide a safe workplace is "a nondelegable duty imposed upon, and belonging solely to, [the corporation]." *Id.* at 118. It concluded that "[b]ecause a corporate officer acting on the corporation's behalf does not owe a corporate employee an individual duty to provide that employee with a safe work place, and because [the individual officers] did not breach any separate duty, the court of appeals erred in affirming their individual liability." *Id.*

■ The classic example of this principle is that of a corporate agent who negligently causes an automobile accident while in the course and scope of his employment. *See id.; Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596–97 (Tex. 1987); *Le Sage v. Pryor,* 137 Tex. 455, 154 S.W.2d 446, 448 (1941). In such circumstances, the corporate agent is liable individually for his own negligent conduct. *Leitch,* 935 S.W.2d at 117. The "independent duty" that gives rise to individual

liability is the "duty of reasonable care to the general public to operate an automobile in a non-negligent manner." *See id.* Accordingly, the law is that "unless alter ego is established, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care." *Id.*

The analysis in *Leitch* requiring a "separate, independent duty" in order to impose personal liability on a corporate officer or agent is most appropriate for determining when a corporate officer or agent may be held personally liable to a subordinate in an employment context. Causes of action rooted in negligent conduct are not directly analogous to causes of action rooted in fraud and misrepresentation. We do not believe that *Leitch* should be construed to shield a corporate agent from liability to a third party in cases involving misrepresentation, fraud and DTPA violations under the theory that "the agent had no greater duty to refrain from defrauding and making misrepresentations to the consumer than did the corporation."

■ The other type of case where corporate officers and agents are shielded from personal liability is cases where the cause of action is based on a corporate agent's conduct that causes the corporation to breach a contractual relationship with a third party or that interferes with a prospective contractual relation with a third party. The rule in those cases is that "an officer or director may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation." *Maxey v. Citizens Nat'l. Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex.1974); *see also ACS Investors, Inc.,* 943 S.W.2d at 432 (affirming the principal

and further fleshing out the rule); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (same). The most recent time the supreme court has spoken on this issue is in *ACS Investors, Inc v. McLaughlin*, where the court expounded on the rule and its rationale:

> Generally, a corporate officer's acts on the corporation's behalf are deemed corporate acts. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117–18 (Tex.1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995). A corporate officer or director may not be held liable for inducing the corporation to violate a contractual obligation as long as he or she acts in good faith on the corporation's behalf. *See Holloway*, 898 S.W.2d at 795. A corporate officer's potential personal gain is not determinative. *Holloway*, 898 S.W.2d at 796. A corporate officer's mixed motives—to benefit himself and for the corporation to benefit—are insuf-

ficient to establish liability. *Holloway*, 898 S.W.2d at 796; RESTATEMENT (SECOND) OF TORTS § 772 cmt. c. (1979) (it is immaterial that the corporate agent also profits). Instead, the plaintiff must show that the officer acted in a manner so contrary to the corporation's best interests that his or her actions could only have been motivated by personal interest. *Holloway*, 898 S.W.2d at 796.

*ACS Investors, Inc.*, 943 S.W.2d at 432.[3]

█ Because this case does not involve causes of action seeking to hold a corporate officer or agent personally liable for causing the corporation to breach a contract with a third party, we do not believe *ACS v. McLaughlin* is particularly instructive in resolving the issue of whether Helm may be held personally liable for his own torts. Helm is protected by no privilege (as in interference with contract

---

**3.** Unfortunately, in *ACS Investors, Inc.*, the court used *Leitch* (a case involving personal liability of the corporate agent for negligent conduct) and the *Restatement (Second) Torts* § 772, cmt. c, in the course of explaining the rule regarding a corporate agent's individual liability for interference with a contract of the corporation. Neither seems to really apply, and creates the possibility of blurring the various rules for when a corporate agent may be held liable for his own conduct. We believe a better statement of the rule regarding when a corporate agent may be held liable for interfering with a corporate contract is found in *Corpus Juris Secundum*, and views the issue in terms of "privilege:"

> One interested as officer in a corporation is privileged to induce the corporation to breach a contract, provided that no improper means are used, he acts in good faith to protect the corporation, and does not act for his own personal benefit.

19 C.J.S. *Corporations* § 547 (1990). The "honest advice" doctrine relied upon by the court in *ACS Investors, Inc.* for clarifying the rule in interference with contract cases does not seem particularly applicable. The comment states that the doctrine is intended to

"protect the public and private interests in freedom of communication and friendly intercourse." RESTATEMENT (SECOND) TORTS § 772, cmt. c (1979). The context does not seem to indicates· that this doctrine was intended to shield corporate officers and agents in the course of their employment by the corporation. Rather, examples of persons protected by the "honest advice" rule listed in the commentary are: lawyers, doctors, clergymen, bankers, investment, marriage or other counselors, and an efficiency expert. Corporate officers, employees or other agents are not listed. The actual *Restatement* rule containing the "honest advice" doctrine which was relied upon by the *ACS* court states:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice.

RESTATEMENT (SECOND) OF TORTS § 772 (1979). Our position is that this is not particularly appropriate to apply to corporate officers or agents, though it probably achieves the same result as the statement of the rule we prefer.

cases), and the "independent duty" analysis applied in negligence cases does not seem to apply either. On the contrary, the causes of action pled against Helm were allegations of fraud and misrepresentation. The general rule is that directors or officers of a corporation are individually liable to third parties for their fraudulent acts and for damages resulting from false representations they make to third persons regarding material matters. *See* 19 C.J.S. *Corporations* § 546 (1990). Rather than applying complex principles of tort law, we believe this case is governed by longstanding general principles of agency law. According to the Restatement of Agency, the general rule is that:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interest, or where the principal owes no duty or less than the normal duty of care to the person harmed.

RESTATEMENT (SECOND) OF AGENCY § 343 (1958). We believe that still to be the law regarding the circumstances under which a corporate agent may be held liable for misrepresentation and fraud. Accordingly, we hold that Helm may be held liable individually for the torts he is alleged to have personally committed.

**II. ARTICLE 2.21 OF THE TEXAS BUSINESS CORPORATIONS ACT DOES NOT OVERRULE PRIOR CASELAW AND NOW REQUIRE THAT THE CORPORATE VEIL MUST BE PIERCED IN ORDER TO HOLD A CORPORATE AGENT INDIVIDUALLY LIABLE FOR THE AGENT'S OWN TORTIOUS CONDUCT.**

Appellee's second major argument that the trial court correctly directed verdict in favor of Helm is that Texas Business Corporations Act art. 2.21 reversed the caselaw discussed herein and effectively eliminated individual liability for corporate officers and agents who are shareholders in the corporation absent evidence that the corporation itself was specifically used for the purpose of perpetrating a fraud. We do not believe the scope of article 2.21 is that broad. The Texas Supreme Court has not addressed this issue, though we note that petition has been filed in a case that does, *Pabich v. Kellar,* 71 S.W.3d 500, 508 (Tex.App.-Fort Worth 2002, pet. filed April 15, 2002).

Article 2.21 states, in relevant part:

> *A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation,* **shall be under no obligation to the corporation or to its obligees with respect to ... any *contractual obligation* of the corporation or any matter relating to or arising from the obligation** *on the basis that the holder ... is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or similar theory,* unless the obligee demonstrates that the holder ... caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate.

TEX. BUS. CORP. ACT ANN. art. 2.21(A) (Vernon Supp.2002) (emphasis added).

Article 2.21 provides the exclusive method for piercing the corporate veil in Texas. The Bar Committee notes following article 2.21 state that the statute was "intended to provide for an exclusive statement as to when the corporate veil may be pierced in the context of contractual obligations ... [and] should also be considered by analogy in the context of tort claims ... and re-

flects a clear public policy that the corporate fiction should be recognized absent compelling circumstances to the contrary." TEX. BUS. CORP. ACT. art. 2.21, Bar Committee Notes—1996 (Vernon Supp.2002). However, we maintain that the case at bar does not involve piercing of the corporate veil. Several features of the actual language used in the statute lead us to conclude that it was not intended to absolve a corporate agent from liability for the agent's own tortious conduct, but is limited to a very specific class of lawsuits.

First, by its terms, article 2.21 limits the class of persons (or entities) it protects. It seems clear that it was intended to insulate a corporation's *shareholders—i.e.,* someone who has an ownership interest in the corporation. The first sentence of article 2.21(A) restricts the statute's applicability to *holders* of shares, *owners* of any beneficial interest in shares, *subscribers* for shares whose subscription has been accepted, or any affiliate thereof or of the corporation. A "share" is a unit of ownership of the corporation. *See* TEX. BUS. CORP. ACT ANN. art. 1.02(A)(23). A " 'shareholder' or 'holder of shares' means the person in whose name shares issued by the corporation are registered." *Id.* art. 1.02(A)(22). A subscriber is one who offers to buy shares in a document called a subscription. *Id.* art. 1.02(a)(25)-(26). "Affiliate" is not specifically defined in the statute, but the common meaning of that word is "a person, organization, or establishment associated with another as a subordinate, subsidiary, or member." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (online version) (Houghton Mifflin 2000). Thus, the first sentence limits the scope of article 2.21 to people who own shares or have some relationship with one who owns shares in a corporation.

The Bar Committee comments support that interpretation, stating that article 2.21 was amended to "establish a clear legislative standard under which the liability of a *shareholder* for the obligations of a corporation is to be determined in the context of contractual obligations and all matters relating thereto." TEX. BUS. CORP. ACT ANN. art. 2.21, Cmts. of the Bar Committee—1996 (Vernon Supp.2002) (emphasis added). We infer that article 2.21's restriction to *shareholders* is significant in understanding the scope of the statute. The statute seeks to protect shareholders—*i.e.,* persons having some kind of ownership interest in the corporation—from being held personally liable for corporate obligations. We believe that identifying shareholders or owners as the only class of persons protected by the statute indicates that the kind of liability it protects them from is liability that would exist by virtue of the mere status as an owner of or shareholder in the corporation. We do not believe that this article was intended to shield a corporate officer or agent who commits tortious conduct merely because the officer or agent also possesses an ownership interest in the corporation. This leads to our next point.

By its terms, article 2.21 limits the types of suits to which it applies. It states that the statute's protection is limited to suits that attempt to impose corporate obligations upon shareholders or owners "*on the basis that* the holder ... is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetuate a fraud, or similar theory." *Id.* art. 2.21(A)(2) (emphasis added). In other words, the statute applies to suits which attempt to impose individual liability on a corporate shareholder *not* on the basis of the shareholder's own actions, but rather on the basis of the shareholder's mere status as shareholder. Most likely, the "similar theory" referred to in the statute is one of the theories listed in *Castleberry v. Branscum,* 721 S.W.2d 270 (Tex.1986). In *Castleberry,* the Texas Supreme Court held that the corporate veil

may be pierced and corporate shareholders may become personally liable for corporate obligations in a variety of circumstances, including: (1) when the corporate fiction is used as a means of perpetrating a fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetrate a monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong. *Castleberry*, 721 S.W.2d at 272. The Bar Committee notes to article 2.21 state that it was enacted "in response to *Castleberry*," for the purpose of establishing a "clear legislative standard under which the liability of a shareholder for the obligations of a corporation is to be determined in the context of contractual obligations and all matters relating thereto." TEX. BUS. CORP. ACT Ann. art. 2.21, Bar Committee Notes—1996 (Vernon Supp. 2002).

■■■■■ Finally, the language of the statute further restricts the kinds of liability it protects shareholders from. Article 2.21 limits shareholder liability for "any contractual obligation of the corporation or any matter relating to or arising from the [contractual obligation]." *Id.* art. 2.21(A)(2). While the Bar Committee notes indicate that the statute should be applied "by analogy to tort obligations," we do not believe that courts should be too liberal in determining that a cause of action "relates to or arises from a corporation's contractual obligation." *See id.* To define fraud, fraudulent inducement, fraud in a real estate transaction, negligent misrepresentation and DTPA claims as "matters relating to or arising from a corporation's contractual obligation," and thus require plaintiffs to meet article

2.21's requirements in order to hold the individual tortfeasor liable extends the statute beyond its intended and logical reach. *See Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 146 (Tex.App.-Texarkana 1994, no writ) (refusing to extend article 2.21 to preclude liability in situations in which liability is based upon "something other than a contractual obligation"). Because the statute requires the corporate veil to be pierced in order to impose personal liability upon a shareholder, defining those causes of action as "matters arising from contractual obligations of the corporation" would place a high burden on a plaintiff seeking to hold a corporate officer or agent liable for his own conduct, and add a layer of protection to any corporate officer or agent who commits a tort merely because he or she also possesses an ownership interest in the corporation. We cannot imagine the Legislature intended such a departure from the general principle that an agent is always liable for his or her own tortious conduct, particularly in light of the recognized principle that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex.1998).

In conclusion, we perceive this case to be one involving agency law; not one regarding disregarding the corporate fiction. We hold that Kingston is not required to meet the standard for piercing the corporate veil set forth in article 2.21 in order to impose personal liability upon Helm. This case involves an agent of a corporation being held accountable as an individual for his own individual conduct. The fact that Helm is a shareholder or an owner or an officer of GDI is not relevant to the question of whether he can be held individually liable for his own tortious conduct. The longstanding law in Texas is clear that he

can be held so liable, and we do not believe that article 2.21 was intended to insulate corporate agents from individual liability for their own tortious conduct.[4]

Accordingly, we hold that the trial court erred in entering directed verdict finding that Helm may not be held individually liable for torts he committed while acting as an agent or an officer of GDI. We thus REVERSE and REMAND for further proceedings consistent with this opinion.

---

**4.** *Accord Pabich v. Kellar*, 71 S.W.3d at 508 (where, after the court conducted analysis of whether corporate officer was liable under article 2.21, court stated: "Our inquiry does not end, however, with the determination that Pabich is not liable [under art. 2.21] because a corporate officer may still be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has either actual or constructive knowledge of the tortious conduct"); *see also Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex.App.-San Antonio 1998, no pet.) (court held that 2.21 was applicable to claims of DTPA, fraud, breach of contract and piercing of the corporate veil when shareholder's liability is only in capacity as shareholders, and not as individual actors who committed the tortious conduct); *cf. Love v. State*, 972 S.W.2d 114, 118 (Tex.App.-Austin 1998, pet. denied) (holding state is not required to satisfy article 2.21 in order to hold shareholders individually liable in administrative suit seeking penalties for failure to plug inactive oil and gas wells); *but see Texas–Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 133–34 (Tex.App.-Texarkana 2000, no pet.) (holding that suit against vice-president and manager of corporation for fraud, fraudulent inducement, negligent misrepresentation, and tortious interference with a contract was subject to requirements of article 2.21, which provide the "exclusive means for recovery against shareholders of a corporation for such claims" because such claims "attempt[] to hold shareholders personally liable for a 'matter relating to or arising from' a contractual obligation of the corporation").