# Supreme Court of Texas

---

No. 22-1085

---

Mary Alice Keyes and Sean Leo Nadeau,

*Petitioners,*

v.

David Weller and IntegriTech Advisors, LLC,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Third District of Texas

---

**Argued January 31, 2024**

JUSTICE LEHRMANN delivered the opinion of the Court.

JUSTICE BUSBY filed a concurring opinion.

JUSTICE BLAND filed a concurring opinion, in which Justice Blacklock, Justice Huddle, and Justice Young joined.

In this case, the plaintiffs bring fraud claims against two individual members of a limited liability company based on their alleged misrepresentations made while acting as agents of the company. Under well-settled Texas common law, individuals are personally liable for torts they commit as corporate agents. We are asked what effect, if any,

Texas Business Organizations Code Section 21.223 has on that common-law principle when the corporate agent who allegedly commits a tort, like each of the defendants in this case, also owns an interest in the company. Section 21.223 shields corporate shareholders, as well as members of a limited liability company, from liability "to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the [shareholder] is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." TEX. BUS. ORGS. CODE § 21.223(a)(2). An exception to this limitation on liability exists when the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [shareholder]." *Id.* § 21.223(b).

The defendants argue that Section 21.223 shields them from liability because they were acting as agents of the company and there is no evidence that they were seeking a direct personal benefit. The court of appeals rejected that argument and reversed the trial court's summary judgment for the defendants on the fraud claims, remanding those claims to the trial court for further proceedings. We hold that Section 21.223 does not limit an individual's liability under the common law for tortious acts allegedly committed while acting as a corporate officer or agent, even when the individual is also a shareholder or member. Accordingly, we agree with the court of appeals and affirm its judgment.

# I. Background[1]

David Weller provides aviation consulting services through IntegriTech Advisors, LLC, of which he is the sole member. In September 2017, Weller began discussing a potential employment relationship with MonoCoque Diversified Interests, LLC, which is in the business of buying, selling, and leasing airplane parts. MonoCoque is wholly owned by Mary Alice Keyes and Sean Leo Nadeau. Both also serve as agents of the company.

Weller met with Keyes and Nadeau numerous times over several months to discuss employment terms. In early January 2018, the parties exchanged emails outlining the agreed terms, including Weller's salary, an additional $50,000 training fee payable quarterly to IntegriTech, and various payments based on a percentage of MonoCoque's revenues and investments that Weller generated. The compensation included a payment of two percent of MonoCoque's company-wide gross revenue (capped at $15 million) during Weller's employment. Keyes and Nadeau represented to Weller that the revenue payments would be made quarterly and were nondiscretionary. In reliance on the representations regarding compensation, Weller declined other pending employment opportunities, accepted MonoCoque's offer, and began working for MonoCoque on January 13, 2018.

---

[1] Because this case involves an appeal of a summary judgment, we recount the facts in the light most favorable to the nonmovants. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022).

A few weeks later, MonoCoque presented Weller with a "term sheet" containing confidentiality, noncompete, and nonsolicitation provisions, as well as an alternative dispute resolution agreement. The term sheet included a compensation provision listing Weller's salary and a "[d]iscretionary incentive bonus of a maximum of two percent (2%) of gross sales revenue based upon level of activity attributed to Weller to achieve said sale." Weller did not sign the documents. Over the next few months, the parties exchanged revised drafts of the various documents but could not reach an agreement and thus never executed them.

In April 2018, Weller inquired about the past-due revenue payments and training stipend for the first quarter. Keyes denied that MonoCoque was obligated to make the revenue payments because Weller had not executed the above-mentioned agreements. Weller then met with Keyes, Nadeau, and MonoCoque's lawyer. At that meeting, Keyes and Nadeau told Weller that MonoCoque had never intended to make the revenue payments on a quarterly basis, but they stated that MonoCoque would pay the first-quarter training stipend and indicated that it would make the revenue payments at some later date. MonoCoque subsequently paid Weller the training stipend.

On May 29, Weller resigned. Keyes then sent Weller a letter stating that "no more funds are due to you by [MonoCoque]" because the parties had "never reached any agreement regarding terms of employment." Weller responded with an invoice demanding a prorated portion of the second-quarter training stipend and estimated amounts for the unpaid revenue interest. MonoCoque, through its lawyer,

responded with a letter stating that because Weller "would never agree to <u>any</u> terms of employment," he "remained an employee at-will with no provision made for any future payments" after his departure from the company. The letter further stated that MonoCoque "never agreed to pay [Weller] 'revenue incentive' or 'training' compensation" and owed him no further payment.

Weller and IntegriTech sued MonoCoque, Keyes, and Nadeau, asserting a breach-of-contract claim against MonoCoque and asserting various fraud claims and a Texas Securities Act claim against all three defendants. The plaintiffs alleged that Keyes and Nadeau made fraudulent misrepresentations and omissions regarding MonoCoque's obligation to compensate Weller to induce him to provide employment and consulting services and that he justifiably relied on those misrepresentations. The plaintiffs further alleged that Keyes and Nadeau were individually liable for their own fraudulent and tortious conduct that they engaged in as agents of MonoCoque. MonoCoque brought several counterclaims.

The defendants filed a motion for partial summary judgment, arguing that Section 21.223 of the Texas Business Organizations Code bars the claims against Keyes and Nadeau individually because the complained-of acts were performed in their capacities as authorized agents of MonoCoque.[2] The trial court granted the motion and severed

_____

[2] The defendants also filed a separate motion for partial summary judgment on the ground that the fraud claims, except fraudulent inducement, are barred by the economic-loss rule. The trial court denied that motion, and it is not before us.

5

the subject claims into a separate action, resulting in a final judgment for Keyes and Nadeau on all claims asserted against them individually. Weller and IntegriTech appealed that judgment.[3]

The court of appeals reversed, holding that Section 21.223's limitations on corporate owners' liability apply when claimants seek to hold such owners liable for corporate obligations by piercing the corporate veil, but that the statute does not abrogate longstanding common law that "individuals are directly liable for their own tortious conduct—even if committed in the course and scope of their employment." 684 S.W.3d 496, 499 (Tex. App.—Austin 2022) (citing *Miller v. Keyser*, 90 S.W.3d 712, 717–18 (Tex. 2002)). In so holding, the court noted that the majority of appellate courts to address the issue have reached the same conclusion. *Id.* at 501 (collecting cases). A minority of courts, however, have held that Section 21.223 can apply regardless of whether the individual defendant's liability is premised on a veil-piercing theory or direct liability for his own tortious conduct as an agent for the company. *See, e.g.*, *TecLogistics, Inc. v. Dresser-Rand Grp.*, 527 S.W.3d 589, 598 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that Section 21.223 applied where the defendant shareholder "was the human agent through which [the company] committed actual fraud against" its contractual obligee). We granted Keyes and Nadeau's petition for review to address this split.

---

[3] Weller and IntegriTech did not complain on appeal about the portion of the judgment disposing of the Texas Securities Act claim.

6

## II. Discussion

We begin with a discussion of the development of the law regarding personal liability for corporate obligations and the related but distinct issue of personal liability for tortious conduct in which an individual engages as a corporate agent.

### A. Piercing the Corporate Veil

Under longstanding Texas common law, corporate shareholders, officers, and directors are generally shielded from liability for corporate obligations. *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). But "courts will disregard the corporate fiction"—i.e., pierce the corporate veil—and hold such agents individually liable for those corporate obligations when the agents "abuse the corporate privilege." *Id.* A veil-piercing doctrine is not a substantive cause of action but "a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) (applying Texas law); *see also Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 582 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Two oft-invoked common-law veil-piercing theories are (1) alter ego, which is triggered "when there is such unity between corporation and individual that the separateness of the corporation has ceased"; and (2) when the corporate form is used as "a sham to perpetrate a fraud." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). As to the latter, in *Castleberry* this Court concluded that to prove there has been a sham to perpetrate a fraud, and thereby pierce the corporate veil, a

7

claimant need not show "actual fraud" (defined as "dishonesty of purpose or intent to deceive") but may show "only constructive fraud."[4]  *Id.* at 273.  That holding corresponded with the Court's "flexible fact-specific approach" to veil piercing "focusing on equity."  *Id.*

The Legislature responded in 1989 by amending Article 2.21 of the Texas Business Corporation Act—the predecessor to the Business Organizations Code provisions at issue—which took "a stricter approach to disregarding the corporate structure."  *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).  Article 2.21 insulated shareholders[5] from liability with respect to "any contractual obligation of the corporation on the basis of actual or constructive fraud, or a sham to perpetrate a fraud, unless [the shareholder] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [shareholder]."  Act of May 16, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 Tex. Gen. Laws 974, 974 (amended 1993, 1997; recodified 2003). The statute also wholly foreclosed shareholder liability based on the corporation's failure to observe any corporate formality.  *Id.* at 974–75. Excepted from the liability limitations were corporate obligations for

---

[4] We described "constructive fraud" as "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests."  *Castleberry*, 721 S.W.2d at 273.

[5] We use "shareholder" to encompass the statute's applicability to "[a] holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted."  TEX. BUS. ORGS. CODE § 21.223(a).

which the shareholder had expressly assumed personal liability or was otherwise liable by statute. *Id.* at 975.

Over the years, Article 2.21's provisions have been amended, expanded, and recodified, and they are now housed in Sections 21.223, 21.224, and 21.225 of the Business Organizations Code. Though the provisions themselves reference only corporations, they apply to limited liability companies as well.[6] The current version of Section 21.223 provides in pertinent part:

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares . . . or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
> . . . .
>
> (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory; or

---

[6] The provisions apply to a limited liability company and its "members, owners, assignees, affiliates, and subscribers." TEX. BUS. ORGS. CODE § 101.002(a). Further, "a reference to 'shares' includes 'membership interests';" "a reference to 'holder,' 'owner,' or 'shareholder' includes a 'member' and an 'assignee';" "a reference to 'corporation' or 'corporate' includes a 'limited liability company';" and "a reference to 'directors' includes 'managers' of a manager-managed limited liability company and 'members' of a member-managed limited liability company." *Id.* § 101.002(b)(1)–(4).

(3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality . . . .

(b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

TEX. BUS. ORGS. CODE § 21.223(a)(2)–(3), (b).   Section 21.224 confirms that liability for an obligation limited by Section 21.223 "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." *Id.* § 21.224.   Section 21.225 carries forward the original statute's exceptions for liability expressly assumed or imposed by statute. *Id.* § 21.225.

**B. Liability of Corporate Agents for Tortious Conduct**

Independent of the "vicarious" liability that may be imposed on corporate shareholders and officers based on veil-piercing theories, we have also long held that corporate agents are "personally liable for [their] own fraudulent or tortious acts" "even though they were acting on behalf of the corporation." *Miller*, 90 S.W.3d at 717 (citing *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex. 1985); *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)); *see also Walker v. F.D.I.C.*, 970 F.2d 114, 122 (5th Cir. 1992) (applying Texas law) ("If a corporate officer knowingly participates in a tortious act, there is no need to pierce the corporate veil in order to impose personal liability."). *Leyendecker*, for example, involved a dispute between a subdivision developer and the

Wechters, to whom the developer sold a townhouse. 683 S.W.2d at 371. The Wechters sued the developer under the Deceptive Trade Practices Act and asserted a libel claim against both the developer and its employee, Chris Hilliard, premised on Hilliard's sending a letter to multiple recipients falsely accusing the Wechters of having asked the developer to make fraudulent insurance claims. *Id.* at 371–72. The trial court rendered judgment holding the developer and Hilliard jointly and severally liable for damages on the libel claim. *Id.* at 372. In this Court, Hilliard argued that he could not be held liable for a tort committed while acting within the scope of his employment. *Id.* at 375. We rejected that argument, holding that "[a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Id.*[7]

Reaffirming this principle in *Miller*,[8] we also cited with approval a Restatement provision on agency that provides: "An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the

[7] In the negligence context, a corporate officer's or agent's "individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). For example, an employee who negligently causes a car accident while driving within the scope of his employment is subject to liability along with the employer. *Id.*

[8] Keyes and Nadeau note that *Miller* involved an analysis of a corporate owner's liability under a separate statute, the DTPA. Nevertheless, *Miller* expressly recognized the "longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts." 90 S.W.3d at 717.

11

fraud or duress occurs in a transaction on behalf of the principal." RESTATEMENT (SECOND) OF AGENCY § 348 (AM. L. INST. 1958), *cited in Miller*, 90 S.W.3d at 717 n.29. And just two terms ago, we yet again made clear that "the fact that an individual was acting in a corporate capacity," i.e., "acting as an agent, employee, or representative of a corporation," "does not prevent the individual from being held personally—or 'individually'—liable for the harm caused by those acts." *Transcor Astra Grp. S.A. v. Petrobras Am., Inc.*, 650 S.W.3d 462, 478 (Tex. 2022), *cert. denied*, 143 S. Ct. 2493 (2023).

### C. Scope of Statutory Protections

Here, we are asked what effect, if any, the provisions of the Business Organizations Code discussed above have on this longstanding common-law principle. On this issue, the courts of appeals and federal district courts are divided. As noted, a majority have held, consistent with the court of appeals' decision in this case, that Section 21.223 applies only "to veil piercing theories (for both contract and related tort claims), . . . not to direct liability claims for an individual's own tortious conduct." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 672–73 (W.D. Tex. 2019).[9] Others hold, however, that the statute applies to liability for all tort claims if the claims arise from or

---

[9] *See also* 684 S.W.3d at 501; *Texienne Oncology Ctrs., PLLC v. Chon*, No. 09-19-00356-CV, 2021 WL 4994622, at *7 (Tex. App.—Beaumont Oct. 28, 2021, pet. denied); *Clements v. HLF Funding*, No. 05-19-01295-CV, 2021 WL 3196962, at *10 (Tex. App.—Dallas July 28, 2021, pet. denied); *Spicer v. Maxus Healthcare Partners*, 616 S.W.3d 59, 117–19 (Tex. App.—Fort Worth 2020, no pet.); *Kingston v. Helm*, 82 S.W.3d 755, 764–67 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied); *In re Technicool Sys., Inc.*, 594 B.R. 663, 671–72 (Bankr. S.D. Tex. 2018).

relate to a corporate obligation. *E.g.*, *TecLogistics*, 527 S.W.3d at 591.[10] Under that reasoning, shareholder liability for such claims—even if arising from the shareholder's own tortious conduct—is barred unless the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." TEX. BUS. ORGS. CODE § 21.223(b). For the reasons discussed below, we hold that Section 21.223 does not apply to, and thus does not limit liability for, claims against corporate shareholders and officers premised on their alleged tortious conduct as agents of the company.[11]

We begin with familiar principles of statutory interpretation, which require us to look to the statute's plain language and to analyze that language contextually and in light of the statute as a whole. *CHCA Woman's Hosp. L.P. v. Lidji*, 403 S.W.3d 228, 231–32 (Tex. 2013). According to the statute's language, the following questions determine whether the general nonliability rule of Section 21.223(a)(2) applies: (1) is the plaintiff a corporation or LLC or its obligee, and is the

---

[10] *See also Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 137 (Tex. App.—Texarkana 2000, no pet.); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 698–99 (S.D. Tex. 2020); *Saeed v. Bennett-Fouch Assocs.*, No. 3:11-CV-01134-F, 2012 WL 13026741, at *3 (N.D. Tex. Aug. 26, 2012).

[11] A shareholder or LLC member is not a corporate agent or representative merely by virtue of being a shareholder or member. But often, particularly in small businesses, shareholders and members also serve as officers or managers of the company. It is those shareholders and members who may act as corporate agents and, in doing so, are not protected by Section 21.223 for their own tortious conduct as agents.

defendant a shareholder in the entity[12] or an affiliate of such a shareholder or of the entity; and (2) does the plaintiff's claim (a) seek to recover for a contractual obligation of the entity or a matter relating to or arising from such an obligation and (b) seek to hold the defendant liable for that recovery on the basis of alter ego, actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory? *See* TEX. BUS. ORGS. CODE § 21.223(a)(2). If all these requirements are met, the nonliability rule applies unless the plaintiff establishes the exception in Section 21.223(b).[13]

Another part of statutory context is statutory history—"the statutes repealed or amended by the statute under consideration." *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023); *see id.* ("Statutory history concerns how the law changed, which can help clarify what the law means." (emphasis omitted)). When Article 2.21 was amended in 1989, close on the heels of *Castleberry*'s emphasis on a "flexible" approach to veil piercing, 721 S.W.2d at 273, it applied only to efforts to impose liability on shareholders with respect to "any contractual obligation of the corporation" based on "actual or constructive fraud," "a sham to perpetrate a fraud," or "failure of the

---

[12] Again, we use "shareholder" to encompass the statute's applicability to "[a] holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted," TEX. BUS. ORGS. CODE § 21.223(a), as well as a member of a limited liability company, *id.* § 101.002(a).

[13] Section 21.225, which contains additional exceptions from the liability limits in Sections 21.223 and 21.224 when a person assumes, guarantees, or agrees to be personally liable for the obligation or is otherwise statutorily liable, is not at issue here. *Id.* § 21.225.

14

corporation to observe any corporate formality." Act of May 16, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 Tex. Gen. Laws 974, 974. The statute thus acted directly on specific veil-piercing theories that, at common law, were methods to impose shareholder liability for corporate contractual obligations despite shareholders' general protection with respect to such obligations. And it contained the same exceptions to the liability restriction that remain in the current version: (1) the holder used the corporation to perpetrate an actual fraud on the obligee primarily for the holder's direct personal benefit; (2) the holder expressly assumed personal liability for the obligation; and (3) the holder was otherwise liable by statute. *Id.*

In 1993, the Act was amended to incorporate additional veil-piercing theories, adding "alter ego" and the catch-all "or other similar theory" to the list of enumerated bases on which shareholder liability for corporate contractual obligations was restricted. Act of May 10, 1993, 73d Leg., R.S., ch. 215, § 2.05, 1993 Tex. Gen. Laws 418, 446.[14] In 1997, the Legislature amended the Act to apply not just to liability for "any contractual obligation of the corporation" but also to liability for "any matter relating to or arising from the obligation." Act of May 16, 1997, 75th Leg., R.S., ch. 375, § 7, 1997 Tex. Gen. Laws 1516, 1522. The Legislature also added "affiliate[s]" of the shareholder and the corporation to the class of persons protected by the statute. *Id.*

---

[14] The 1993 amendment also added the preemption provision, stating that when liability is limited by the statute, such liability "is exclusive and preempts any other liability imposed [for the covered obligation] under common law or otherwise."

15

The statutory history and language confirm that the statute's focus has always been, and continues to be, on the liability of shareholders for matters relating to corporate contractual obligations—not the liability of corporate agents for their own misconduct. TEX. BUS. ORGS. CODE § 21.223(a)(2) (protecting shareholders from liability with respect to "any *contractual obligation of the corporation* or any matter relating to or arising from *the obligation*" (emphases added)). Further, the statute applies to shareholder liability for those obligations "on the basis that the holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." *Id.*[15] The statute simply does not address the individual liability of corporate *agents* for their own tortious acts. And again, we have repeatedly and recently confirmed that corporate agents may be held liable for such conduct. *Transcor*, 650 S.W.3d at 479.

In sum, we do not understand Section 21.223 to shield a corporate agent who commits tortious conduct from direct liability "merely because the officer or agent also possesses an ownership interest in the corporation." *Kingston*, 82 S.W.3d at 765. Accordingly, we hold that Section 21.223 has no effect on the independent common-law principle

---

[15] Because Weller and IntegriTech do not seek to hold a shareholder directly liable for his conduct *as a shareholder*, we need not address the applicability of Section 21.223(a)(2) in such cases. In particular, we do not decide whether this statute applies to non-veil-piercing theories of liability or whether a particular direct-liability tort claim would impose liability "with respect to . . . [a] contractual obligation of the corporation or [a] matter relating to or arising from the obligation." TEX. BUS. ORGS. CODE § 21.223(a)(2).

that corporate agents who direct or engage in tortious conduct are personally liable for that conduct.

## D. Application

In this case, Weller and IntegriTech allege that Keyes and Nadeau personally made false "representations and commitments . . . regarding incentive compensation for revenue generated" by Weller and "allowed Weller to commence with his employment knowing that he believed the pre-employment terms to be in effect because they had told him that this was so." Further, Keyes and Nadeau allegedly "accepted the benefit of Weller's knowledge and connections knowing that they did not intend to perform on the agreement." Whether the record supports those allegations is beyond the scope of Keyes and Nadeau's motion for partial summary judgment and thus beyond the scope of our review. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that a motion for summary judgment "must stand or fall on the grounds expressly presented in the motion").

Rather, the only ground on which summary judgment was sought on the fraud claims was that Section 21.223 bars the claims against Keyes and Nadeau individually because all the alleged acts and omissions "were performed in their capacities as authorized agents" of MonoCoque. In turn, Keyes and Nadeau maintain that they are protected from liability absent evidence that they acted "primarily for the[ir] direct personal benefit." TEX. BUS. ORGS. CODE § 21.223(b) (excepting from the statute's protections a shareholder or affiliate who "caused the corporation to be used for the purpose of perpetrating and

17

did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate").

As discussed, the undisputed fact that Keyes and Nadeau made the alleged misrepresentations in their "corporate capacity" does not insulate them from liability under the common law. *Transcor*, 650 S.W.3d at 479. And Section 21.223 does not limit the liability of corporate agents for their own fraudulent or tortious conduct merely because they are also shareholders or members. Accordingly, the absence of evidence that Keyes and Nadeau perpetrated a fraud for their "direct personal benefit" is not fatal to the plaintiffs' claims, which involve acts allegedly committed as corporate agents, not as owners.

Our holding does not mean that Weller and IntegriTech should prevail on their fraud claims or even that the record evidence is sufficient to raise a genuine issue of material fact on the elements of those claims; again, those issues are beyond the scope of our review. However, it does mean that Keyes and Nadeau are not entitled to summary judgment on the only ground they asserted.

### III. Conclusion

We hold that the trial court erred in granting summary judgment on the fraud claims against Keyes and Nadeau and that the court of appeals correctly reversed that judgment. Accordingly, we affirm the court of appeals' judgment and remand the case to the trial court.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 28, 2024

18