

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00619-CR

Bryan William **COLUMBUS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 639308
Honorable Timothy Johnson, Judge Presiding

**OPINION ON EN BANC RECONSIDERATION**

Opinion by: Lori Massey Brissette, Justice
Concurring Opinion by: Rebeca C. Martinez, Chief Justice
Concurring Opinion by: Lori I. Valenzuela, Justice
Dissenting Opinion by: Velia J. Meza, Justice

Sitting en banc: Rebecca C. Martinez, Chief Justice
    Irene Rios, Justice
    Lori I. Valenzuela, Justice
    Lori Massey Brissette, Justice
    Adrian A. Spears, Justice
    Todd McCray, Justice
    Velia J. Meza, Justice

Delivered and Filed: June 30, 2025

AFFIRMED

A jury convicted appellant Bryan William Columbus with the offense of assault causing bodily injury. On appeal, Columbus argues the evidence is legally insufficient to disprove he acted in self-defense, and the judgment should be modified to delete the family violence finding. We affirm the judgment.[1]

## BACKGROUND

Columbus was charged by information with assault causing bodily injury after police arrested him for striking Amber Estrada with his hand. At trial, the jury heard testimony from San Antonio Police Officer Todd M. Kalk and Detective Victoria Jimenez, who had been dispatched to Amber's apartment after she had called 911. Amber told the 911 operator Columbus had "put his hands on [her]" multiple times and was refusing to leave her apartment. The jury also heard the audio recording of Amber's 911 call, saw pictures depicting bruising and scratches around her neck and cheeks, and heard testimony from Columbus, who claimed he and Amber were "common-law," lived together at the time of the incident, and was defending himself from her.

The jury found Columbus guilty, and the trial court sentenced him to one-year confinement, probated for one year. The judgment also contained an affirmative finding of family violence. Columbus now appeals.

## SELF–DEFENSE

Columbus contends the evidence is legally insufficient to disprove he acted in self-defense. For support, he relies on his testimony that he acted in self-defense after Amber woke him up in the middle of the night, pushed him out of bed, and yelled at him "to get out." He testified when

---

[1] On May 22, 2024, a panel consisting of Justice Patricia O. Alvarez, Justice Luz Elena D. Chapa, and Justice Irene Rios issued an opinion and judgment affirming the trial court's judgment of conviction. On June 6, 2024, Columbus filed a motion for en banc reconsideration. On January 28, 2025, within its plenary power, we voted to grant en banc reconsideration of this appeal. *See* TEX. R. APP. P. 41.2(c), 49.5. On reconsideration en banc, we withdraw our previous opinion and judgment and substitute this opinion and judgment in their place.

she struck him with closed fists, he grabbed her and pushed her away. According to Columbus, the State did not produce any evidence to refute this self-defense evidence.

### *Standard of Review*

"[I]n a claim of self-defense . . . the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). "The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defense issue," whereas the State's burden of persuasion "requires only that the State prove its case beyond a reasonable doubt." *Id*. at 608–09 (quoting *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)) (internal quotations omitted). This means:

> [i]n resolving the sufficiency of the evidence issues, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Id*. at 609 (alterations in original) (quoting *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

Additionally, self-defense is a fact issue for the jury to determine, and "[a] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Id.* (alteration in original) (quoting *Saxton*, 804 S.W.2d at 914) (internal quotation marks omitted). Moreover, under the general principles governing legal sufficiency, we remain mindful of "the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence," and we defer to the trier of fact's credibility and weight determinations. *Id*. at 608 (quoting *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011))

(internal quotation marks omitted). We also presume "the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Id.*

### *Applicable Law*

"[Texas] Penal Code Section 9.31 provides that, subject to certain exceptions, a person is justified in using force against another 'when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.'" *Id*. at 606 (quoting TEX. PEN. CODE § 9.31(a)). "The use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force." *Id.* (citing TEX. PEN. CODE § 9.31(b)). "A 'reasonable belief' in this context is defined as 'one that would be held by an ordinary and prudent man in the same circumstances as the actor.'" *Id*. (quoting TEX. PEN. CODE § 1.07(a)(42)).

### *Application*

Here, the jury heard testimony from Officer Kalk, who testified he had been dispatched to Amber's apartment after she had called 911 and reported Columbus had "put his hands on [her]" multiple times and was refusing to leave her apartment. Officer Kalk testified when he arrived at Amber's apartment, he detained Columbus and found Amber outside her apartment visibly upset with noticeable bruising around her neck and cheeks. The jury watched a recording of Officer Kalk's body camera, which showed Amber telling him Columbus had been staying with her when he slapped her twice with an open hand.

The jury also heard the recording of Amber's 911 call. During the call, Amber tells the 911 operator Columbus "put his hands on [her]" and slapped her multiple times. The jury also heard Amber and Columbus arguing while Amber was speaking to the 911 operator and Amber

screaming, "Get off of me." During the call, Amber tells the operator Columbus was "still slapping me."

Detective Victoria Jimenez testified she was also dispatched to the scene, and when she arrived, she spoke to Columbus and Amber and took photographs of them to document any injuries. Detective Jimenez testified she did not observe any injuries on Columbus, but she observed blood underneath one of his fingernails on his right hand. She also testified she asked Columbus whether he had any injuries or was in any pain, and he stated he was not. As to Amber, Detective Jimenez testified she observed several bruises and scratches on Amber's face and neck, and she testified one of the scratches had broken the skin. The photographs she took of Columbus and Amber were admitted into evidence.

Finally, the jury heard testimony from Columbus, who testified Amber woke him up in the middle of the night and started pushing him out of the bed and throwing his cell phone at him. Columbus testified he left the bedroom and went to the living room to distance himself from her, but Amber came into the living room and continued to scream at him. Columbus stated Amber started "tugging on me and pushing me," and then "she closed her hands and [] started hitting me" with closed fists. He testified he tried to avoid her and told her to stop hitting him until "I kind of grabbed her by her face and nudged her away, more or less." At that point, Amber called the police.

When viewing this evidence in the light most favorable to the prosecution and deferring to the jury's assessment of the credibility of the witnesses, the jury could have disbelieved Columbus's testimony and rejected his self-defense claim. *See id.* at 608–09. The jury could have also reasonably inferred Columbus assaulted Amber based on Officer Kalk and Detective Jimenez's testimony detailing Amber's injuries, the photographs depicting Amber's injuries, and

the 911 recording revealing Columbus was assaulting Amber while she was on the phone with the police. And to the extent Columbus contends the State was required to produce evidence to refute his self-defense claim, we remain mindful our standard of review does not require us "to look to whether the State presented evidence which refuted appellant's self-defense testimony." *Id.* at 608. Rather, we must determine, after viewing all the evidence in the light most favorable to the prosecution, whether "any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.*

Here, the record does not indicate the jury was irrational in rejecting Columbus's testimony about his self-defense claim, and we may not substitute the jury's credibility determination of Columbus's testimony with that of our own. *See id*. Having viewed the evidence under the appropriate standard of review, we conclude the jury could have rationally rejected Columbus's self-defense claim and found a verdict of guilty beyond a reasonable doubt. *See id*. We therefore overrule Columbus's self-defense argument.

### AFFIRMATIVE FINDING OF FAMILY VIOLENCE

Columbus next complains the trial court erred by including an affirmative finding of family violence in the judgment because the trial court did not orally pronounce an affirmative finding of family violence during sentencing, as required by the statute. Moreover, he argues when there is a conflict between the oral pronouncement of the sentence and the sentence in the written judgment, the oral pronouncement controls. Therefore, the judgment should be reformed to delete the finding.

### *The Record*

Here, the trial court pronounced the following sentence: "I will accept the state's recommendation of a $500 fine, costs of court, one year probated for a period of a year, the BIPP

program. I will ask that he participate in 40 hours of community service. Parenting class." Thereafter, the trial court entered judgment including an affirmative finding of family violence.

### *Applicable Law*

To determine whether it was proper to include the affirmative finding of family violence in the judgment if it was not orally pronounced in the sentence, we need to determine whether an affirmative finding of family violence is a part of the sentence. Columbus's contention therefore requires us to construe Article 42.013 of the Code of Criminal Procedure which addresses an affirmative finding of family violence. "Statutory construction is a question of law that we review de novo." *State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024). "In interpreting the text of a statute, we must presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if possible." *Id.* "We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts." *Id.* "[W]e look to the entire act in determining the legislature's intent with respect to a specific provision." *Id.* "We may also consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms, and legal dictionaries to determine the meaning of undefined legal terms." *Id.*

Article 42.013 of the Code of Criminal Procedure identifies what constitutes a finding of family violence: "[i]n the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. art. 42.013.[2] Title 5 includes Section 22.01—the provision for

---

[2] The Article has not been altered since it became law in 1993, except to update the cross-reference to the Family Code in 2003. *See* Acts 2003, 78th Leg., ch. 1276, § 7.002(h) (codified at TEX. CODE CRIM. PROC. art. 42.013); *Heath*, 696 S.W.3d at 689 ("We construe an amended statute as if it had originally been enacted in its amended form, mindful that the legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions.").

misdemeanor assault for which Columbus was convicted. Section 71.004 defines family violence as actions by one family or household member against another family or household member "intended to result in physical harm, bodily injury, [or] assault . . . but does not include defensive measures to protect oneself."[3] Shall means "mandatory"; i.e., it "imposes a duty." *See, e.g.*, *State v. Stephens*, 663 S.W.3d 45, 55 (Tex. Crim. App. 2021).

"Affirmative finding" is not defined in the statute. Black's Law Dictionary defines "affirmative" as "[s]upporting the existence of certain facts," "[i]nvolving or requiring effort," or "[g]iving assent." *Affirmative*, BLACK'S LAW DICTIONARY (12th ed. 2024), *available at Westlaw*. In other words, a finding is affirmative if it supports the existence of certain facts or gives assent to those facts. This is consistent with the Court of Criminal Appeals' jurisprudence construing "affirmative finding" in the context of an affirmative finding of a deadly weapon where the jury acts as trier of fact. *See Duran v. State*, 492 S.W.3d 741, 746, 747 (Tex. Crim. App. 2016) (providing Court of Criminal Appeals has "allowed for entry of a deadly-weapon finding in scenarios where the trier of fact does not directly express that it has determined that a deadly weapon was used or exhibited in commission of a felony offense or during immediate flight therefrom." (citing *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985)). *See generally* TEX. CODE CRIM. PROC. art. 42A.054.

Accordingly, Article 42.013 provides that in an assault trial, if the court determines that the assault involved actions by one family or household member against another family or household member intended to result in physical harm other than through self-defense, the court has a duty to assent to a finding or support the existence of certain facts in a finding and enter that

---

[3] The provision also includes "abuse" and "dating violence" as defined in Section 71.0021. *See* TEX. FAM. CODE § 71.004.

finding in the judgment.[4]  In other words, "the trial court is statutorily obligated to enter an affirmative finding of family violence in its judgment, if during the guilt phase of trial, the court determines that the offense involved family violence." *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006).  Therefore, other than in the judgment, nothing in Article 42.013 requires the documentation of the "affirmative finding" in the record or its oral pronouncement. *Cf.* TEX. CODE CRIM. PROC. art. 42A.105 (providing if judge places defendant charged with certain offenses on deferred adjudication community supervision, judge shall make affirmative finding of fact and "file statement of that affirmative finding with the papers in the case").

By contrast, "[t]he sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law." TEX. CODE CRIM. PROC. art. 42.02.  "[A] sentence 'consists of the facts of the punishment itself, including the date of commencement of the sentence, its duration, and the concurrent or cumulative nature of the term of confinement and the amount of the fine, if any.'" *Burg v. State*, 592 S.W.3d 444, 450 (Tex. Crim. App. 2020) (*State v. Kersh*, 127 S.W.3d 775, 777 (Tex. Crim. App. 2004)).  As the *Burg* court explained:

> These things are clearly "in" the closed curve of things that can make a "sentence" legal or illegal: a term of years; a fine; the fact of shock or regular probation; and enhancements.  These things are "out": restitution; an Article 37.07 election for the jury to assess punishment; deadly-weapon findings; the terms of community supervision (including restitution when it is a condition of probation); court costs; sex-offender registration; and forfeiture of contraband.

*Id.* at 451 (footnotes omitted).  In general, "[a] defendant's sentence must be pronounced orally in his presence." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).  "When there is a

---

[4] The Judgment is defined by the Code of Criminal Procedure as "the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant." TEX. CODE CRIM. PROC. art. 42.01 § 1.

conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." *Id.*

### *Analysis*

But nothing in Article 42.013 makes it a part of the sentence or subjects it to the statutory requirements of a sentence. Specifically, the finding of family violence is not the "punishment itself" or the part of the judgment that orders the punishment to "be carried into execution." *See* TEX. CODE CRIM. PROC. art. 42.02; *cf.* TEX. CODE CRIM. PROC. art. 42.01, § 1 (addressing how judgment should reflect sentence in subsections (9)–(10), (15), (17)-(19)) & § 5 (addressing how judgment should reflect Article 42.013 finding).[5] At best, it would clearly fall "out" of a sentence like a deadly weapons finding. *See Burg*, 592 S.W.3d at 451.

Accordingly, an Article 42.013 finding of family violence is not a sentencing issue; instead, it is an issue determined by the trial court based on the evidence admitted during the guilt-innocence phase of trial. *See* TEX. CODE CRIM. PROC. art. 42.013 (requiring trial court to enter affirmative family violence finding if court determines offense involved family violence); *see also Butler*, 189 S.W.3d at 302 (holding trial court is statutorily obligated under article 42.013 to enter affirmative finding of family violence if during guilt phase of trial, it determines offense involved family violence). And neither the statute nor the Texas Court of Criminal Appeals have signaled an oral rendition of the trial court's family violence determination during sentencing is mandatory.[6]

---

[5] Section 1 of article 42.01 of the Texas Code of Criminal Procedure, which addresses judgments, provides "[t]he judgment shall reflect," among other things, "[t]he term of sentence." TEX. CODE CRIM. PROC. art. 42.01 § 1. Section 5 separately provides "[i]n addition to the information described by Section 1 of this article, the judgment should reflect affirmative findings entered pursuant to Article 42.013 of this code." *Id.* § 5.

[6] An affirmative finding of family violence undoubtedly carries with it serious collateral consequences for a defendant. *See generally* Office of Court Administration, *The Texas Family Violence Benchbook*, Ch. 10.4 (Sept. 2011), https://www.txcourts.gov/media/478288/domesticviolencebenchbook.pdf (listing collateral consequences). But collateral consequences do not make it part of the sentence.

Even so, our opinion should not be read to suggest it is not a better practice for trial courts to orally pronounce the affirmative finding of family violence. *Cf. Duran v. State*, 492 S.W.3d 741, 747 n.3 ("Indeed, we have noted that submitting a special issue at punishment may be the better practice, but we have never held that a purely 'express' finding though a special issue at punishment is the only scenario that authorizes the trial court's entry of a deadly-weapon finding."). Nor do we address the remedies available to a defendant wishing to challenge the affirmative finding of family violence in the judgment. *See* Tex. R. App. P. 47.1.

Columbus cites our opinion in *Sequiera v. State* in support of his argument, but *Sequiera* is distinguishable. No. 04-14-00361-CR, 2015 WL 4554334 (Tex. App.—San Antonio July 29, 2015, no pet.) (mem. op., not designated for publication).[7] In *Sequiera*, Anthony John Sequiera was charged with and found guilty of the offense of terroristic threat of a family/household member. *See id.* at *1. During sentencing, the State recommended "a $1,500 fine, court costs, one year in the Bexar County jail, time and money to run concurrent, credit for time served and an affirmative finding of family violence." But the trial court rejected that recommendation and "pronounced a sentence of forty-five days in jail, time served." *Id.* at *5. The judgment, however, reflected the State's rejected recommendation, including the affirmative finding of family violence. *Id.* at *5. Sequiera argued "the trial court violated his due process rights," and the State conceded "the trial court erred in its judgment." *Id.* at *5. In other words, the trial court indicated on the record it would not follow the State's recommendation and not include the affirmative

---

[7] *Sequiera* is unpublished and therefore has no precedential value. *See* TEX. R. APP. P. 47.7(a) ("Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value but may be cited with the notation, '(not designated for publication).'"); *cf. Ex parte Sanders*, 663 S.W.3d 197, 204 (Tex. Crim. App. 2022) (providing under stare decisis courts "'should not frivolously overrule established *precedent*'" (emphasis added) (quoting *Ex parte Thomas*, 623 S.W.3d 370, 381 (Tex. Crim. App. 2021))); *Stare Decisis*, BLACK'S LAW DICTIONARY (12th ed. 2024), *available at* Westlaw ("The doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation.").

finding of family violence, but the judgment reflected otherwise. The parties did not dispute it violated his right to due process. *See id.* at *5–6. We agreed with Sequiera the "oral pronouncement of sentence controls," and we struck the fine, modified the sentence to forty-five days, and struck the affirmative finding of family violence. *Id.* However, at no point in the opinion did we address whether the affirmative finding formed a part of the sentence; indeed, Article 42.013 of the Code of Criminal Procedure is not even cited in the opinion. Instead, we plainly accepted the parties' contention that the trial court erred by first rejecting the State's recommended sentence and finding and then ultimately imposing them anyway.

However, we are aware *Sequiera* has created confusion. Therefore, to the extent *Sequiera* can be read to mandate that a trial court must orally pronounce an affirmative finding of family violence, it is overruled. *See, e.g.*, *Cody Texas, L.P. v. BPL Expl., Ltd.*, 619 S.W.3d 735, 746 (Tex. App.—San Antonio 2019, pet. denied) ("An erroneous opinion that is not expressly overruled threatens to 'cause[ ] some confusion regarding the issue' it purports to resolve." (quoting *Kingston v. Helm*, 82 S.W.3d 755, 760 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied))).

We therefore reject Columbus's final argument.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment of conviction.

Lori Massey Brissette, Justice